## STATE v. AMOS MAYNARD AND MAMIE LUSTER

(Filed 10 January, 1958.)

**1. Criminal Law § 83—**

The trial court may properly exclude testimony on cross-examination which is merely repetitious, and on this record it *is held* the trial court did not unduly restrict the examination or cross-examination of witnesses by defendants.

**2. Same—**

Where a witness testifies on cross-examination as to the versions given by defendant on four separate occasions, whether such versions are contradictory or repugnant is for the jury to determine, and the court properly sustains objections to questions on cross-examination as to whether the defendant had told the witness four different versions of the occurrences.

STATE *v.* MAYNARD.

3. **Same—**

Where a witness testifies as to statements made by one defendant, cross-examination as to what another defendant told the witness is properly excluded as tending to draw out a self-serving declaration.

4. **Criminal Law § 162—**

· Where the record does not show what the witness would have testified if he had been permitted to answer questions objected to, the exclusion of the testimony is not shown to be prejudicial. This rule applies also to questions asked on cross-examination.

5. **Criminal Law § 83—**

The exclusion of cross-examination of a witness as to his religious beliefs *held* not prejudicial.

6. **Criminal Law § 108—**

Where the court gives equal stress to the contentions of the defendant and the State, the fact that the court necessarily consumes more time in stating the State's contentions is not ground for objection.

7. **Criminal Law §§ 90, 163—**

Where the court properly instructs the jury that testimony competent against one defendant alone was admitted solely against such defendant and should not be considered against the others, a further statement of the court that the testimony could be considered as bearing upon the innocence of the other defendants, while technically incorrect, is not prejudicial.

8. **Homicide § 3—**

A murder committed in the perpetration of or attempt to perpetrate a robbery from the person is murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. G.S. 14-17.

9. **Homicide § 2—**

If one defendant kills a human being in the attempted perpetration of a robbery committed in the execution of a conspiracy participated in by all the defendants, each defendant is guilty of murder in the first degree.

10. **Conspiracy § 5: Criminal Law § 74—**

Where parties enter into a conspiracy to commit a felony, each is deemed a party to the acts and declarations of each conspirator done or uttered in furtherance of the common, illegal design.

11. **Homicide § 27g—**

In this prosecution for a homicide committed in the attempted perpetration of a robbery, the charge of the court to the effect that if the jury were satisfied beyond a reasonable doubt that the defendants conspired and agreed to rob deceased, that one defendant committed acts in furtherance of the common design and agreed to share in the proceeds of the robbery, and that in furtherance of such plan and agreement, and while attempting to rob deceased, another defendant shot and killed deceased, the jury should return a verdict of guilty of murder in the first degree, *is held* without error and not to contain an expression of opinion on the evidence in violation of G.S. 1-180.

APPEAL by defendants Amos Maynard and Mamie Luster from *Johnston, J.,* April-May 1957 Term of SURRY.

Criminal prosecution upon a bill of indictment charging that Monroe Willard, Johnny Liss Luster, Amos Maynard, Mamie Luster and Irene Luster on 7 February 1957 feloniously, wilfully, and of their malice aforethought, did kill and murder John Allen Branch.

The court appointed separate counsel to represent each defendant. After their arraignment Monroe Willard and Johnny Liss Luster, pursuant to G.S. 15-162.1, tendered pleas of guilty of murder in the first degree as charged against them in the indictment, which the State, with the approval of the court, accepted. During the jury's deliberations after the charge of the court, Irene Luster tendered a plea of guilty of murder in the second degree as charged against her in the indictment, which plea the State accepted.

Amos Maynard and Mamie Luster entered pleas of not guilty. As to each of these two defendants the jury returned a verdict of guilty of murder in the first degree, and recommended for each of them imprisonment for life in the State's prison.

From judgments imprisoning each of these two defendants in the State's prison for life, they appeal.

*George B. Patton, Attorney General, and T. W. Bruton, Assistant Attorney General, for the State.*
*Norman and Reid for Defendants, Appellants.*

PARKER, J. The State's evidence presents these facts:

Johnny Liss Luster and Irene Luster are husband and wife. Mamie Luster is the stepmother of Johnny Liss Luster, and her husband, Sherman Luster, was serving a road sentence on 7 February 1957. Amos Maynard married Mamie Luster's sister. Monroe Willard was 16 years old, cannot read and write, and had been living at Mamie Luster's home about three weeks prior to 7 February 1957. He had been convicted twice for breaking and entering. Mamie Luster lived on the Pilot Mountain-Westfield Road about four miles from the home of John Allen Branch.

On the morning of 7 February 1957 all five defendants went to Mt. Airy in Amos Maynard's automobile. Upon their arrival in Mt. Airy, Amos Maynard and Johnny Liss Luster went to a bank there, and tried, without success, to borrow some money on Amos Maynard's automobile. They then went to one or two used car lots, and attempted to sell Maynard's automobile, but failed to do so. Around noon they went to Pilot Mountain, where an effort was made, that failed, to sell Maynard's automobile to the Pontiac place. About three o'clock in the afternoon all five defendants left Pilot Mountain in Maynard's automobile to

return to Mamie Luster's home. While on their way Amos Maynard said he wanted a drink of liquor, and asked Mamie Luster if she did. She said she didn't have but $20.00, which she gave to Johnny Liss Luster. They drove to John Allen Branch's home. Johnny Liss Luster got out, went in the house, and returned with a quart of liquor in a half-gallon can and $17.00 in change, which money he gave to Mamie Luster. They drove on to Mamie Luster's home.

They drank some of the liquor. All five of them were sitting in the heater room, and Mamie Luster, Johnny Liss Luster and Amos Maynard were talking about leaving, and going to Kentucky, and wanting some money. Monroe Willard said he knew a man, Sam Shinault, who had some money, that they had no money to go to Kentucky, rob him. Irene Luster said, "better leave him alone, he will shoot you." Mamie Luster said she knew a man, who carried a roll of money, John Allen Branch, the man who got her $20.00 bill. Irene Luster said that would be better, because there are not so many houses around. Prior to this time, Amos Maynard and Mamie Luster told Monroe Willard they would give him a rifle if he would rob old man Branch. Monroe Willard said he didn't have a gun. Mamie Luster said he could use the rifle. Amos Maynard told him he could use his pistol, but it wasn't there. Johnny Liss Luster told Monroe Willard not to use the pistol, he might miss: it would be better to use the shotgun. Johnny Liss Luster, Amos Maynard and Mamie Luster told Monroe Willard if he was going to shoot like they said, not to let him get the first shot. Amos Maynard, Johnny Liss Luster and Mamie Luster told Monroe Willard to shoot. Mamie Luster told Willard to kill Branch. Amos Maynard and Mamie Luster told Monroe Willard to wear something other than what he had on. Amos Maynard told him to pull his shirt off, so he would have a clean shirt to put on, after he got the money. He pulled off his shirt. Mamie Luster gave him a shirt which he put on, after his face was blacked. Irene Luster had some blacking on the fireboard. Monroe Willard's face was blacked in the heater room.

Monroe Willard with a shotgun and Johnny Liss Luster went out, and got in Johnny Liss Luster's car. Amos Maynard came out, got in his car, and pushed Johnny Liss Luster's car off to get it started. He drove his car to Hunter's Service Station. Amos Maynard followed to put gas in Johnny Liss Luster's car. It was then about 6:00 o'clock p. m. At the Service Station Johnny Liss Luster had Monroe Willard to look off, because his face was blacked.

Johnny Liss Luster and Monroe Willard left the Service Station in Luster's car with Luster driving, and went to a road,

which goes from the highway to the home of John Allen Branch. The Branch home is about three miles from Hunter's Service Station. When they reached the road, Monroe Willard got out of the car, and went to the Branch home. As Willard got out of the car, Johnny Liss Luster gave him five shells, he told him to use a shell like that, #6. A dog began barking, and John Allen Branch came out on his porch. Monroe Willard raised his shotgun, and shot him. Willard went back to the highway, and got in Johnny Liss Luster's car. He told Luster he had shot Mr. Branch. Luster asked him if he got the money, and he replied no.

Mrs. John Allen Branch testified that on this night about 7:00 p. m. she, her husband, and two grandchildren were sitting in their home looking at television, that the dogs barked, and her husband got up, turned on the porch light, and went out, and a gun fired. John Allen Branch did not speak, he came back into the room, and fell dead on the floor. Mrs. Branch and her grandchildren remained alone in the home all night.

After Willard shot and killed John Allen Branch, he and Johnny Liss Luster returned to Mamie Luster's home. Mamie Luster, Irene Luster and Amos Maynard were there. Willard told them he had shot and killed John Allen Branch. Mamie Luster asked Willard, if he got any money. He replied he did not. Mamie Luster tried to get Willard and Johnny Liss Luster to go back, and kill Mrs. Branch, and get the money. They refused. Mamie Luster said if Mrs. Branch was killed, there would be nobody to talk. They had Willard to pull off his shoes, and put them in the heater. Later an officer took the shoes out of the stove at Mamie Luster's home. Mamie Luster told Johnny Liss Luster to take the shotgun to the woods, and hide it under a log.

The defendants have filed a joint brief, in which they contend four questions are presented for decision on their appeal.

First, they group twenty-nine assignments of error, which they contend show that the trial court overly restricted the defendants' examination of witnesses, particularly in the light of the latitude afforded the State.

A study of the Record shows that the trial court did not overly restrict the examination or cross-examination of witnesses by the defendants, but on the contrary extended great latitude to the defendants in such examinations. Many of the questions referred to in these assignments of error, the answers to which the court excluded upon the State's objections, were repetitious or incompetent. Exceptions to the exclusion of testimony which is mere repetition cannot be sustained. *S. v. Wall,* 218 N.C. 566, 11 S.E. 2d 880.

M. G. Crawford, a State agent for the State Bureau of Investigation, testified for the State on direct examination as to what Monroe Willard told him in the presence of Amos Maynard, Mamie Luster, Irene Luster and Johnny Liss Luster as to the plan to rob and kill John Allen Branch, and as to his killing him. On cross-examination counsel for Amos Maynard asked M. G. Crawford several questions as follows: (1) "How many different statements has Monroe Willard made to you, how many different versions of this fantasy?"; (2) "And he told you and gave you different versions of it every time, did he not?"; (3) "He told different or made different statements about it from time to time, did he not?"; (4) "How many different statements did you hear him make?" The court sustained the State's objections to these questions, and the defendants assign this as error. However, the trial court told the cross-examining counsel that he could ask M. G. Crawford what Monroe Willard told him, and that it was for the jury to decide as to whether his statements were different. Whereupon, M. G. Crawford in response to counsel's questions stated what Monroe Willard told him on four different occasions about the commission of the crime. After this counsel then asked Crawford, "so that is four different versions?" The court sustained the State's objection to this question. These assignments of error are without merit.

On direct examination by the State Crawford was asked no question as to what, if anything, Mamie Luster said to him; nor did he testify as to anything she told him. She assigns as error the refusal of the court over the State's objection to permit Crawford to testify as to what, if anything, she told him. Such question was incompetent as tending to draw out a self-serving declaration. If it became so later in corroboration of Mamie Luster's testimony, it was not again offered. *S. v. McCanless,* 182 N.C. 843, 109 S.E. 62.

Amos Maynard assigns as error the refusal of the trial court over the State's objection to permit Crawford to answer a question to this effect: Did Monroe Willard tell you that Amos Maynard said to the defendants, you fellows ought not to go around and bother that old man? The Record fails to show what Crawford would have testified to if permitted to answer. Therefore, it is impossible for us to know whether the ruling was prejudicial or not. *S. v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342. The court sustained the State's objections to several other questions asked by defendants' counsel, but what the answer would have been is not in the Record.

The court, upon the State's objections, refused to require Monroe Willard to answer on cross-examination some questions as to his religious beliefs. According to what this Court said in

*S. v. Beal,* 199 N.C. 278, 154 S.E. 604, prejudicial error is not made to appear.

To discuss all of these assignments of error grouped under the first question separately would unduly lengthen this opinion, and serve no useful purpose. All of them have been considered, and none is sufficient to show prejudicial error that would justify a new trial. The defendants were allowed by the court to fully and adequately examine and cross-examine the witnesses.

The second question that the defendants present is, that the trial court did not give equal stress to the contentions of the State and the defendants, as required by G.S. 1-180.

The evidence for the State consumes about 38 pages of the Record: the evidence for the defendants, including the testimony of Irene Luster, takes up about 22 pages. The trial court necessarily took more time in stating the evidence and contentions of the State than in stating the evidence and contentions of the defendants. A careful study of the evidence and the charge shows that the trial judge sufficiently and fairly reviewed the evidence and contentions of the defendants, and gave equal stress to the contentions of the defendants and the State. Defendants' assignments of error grouped under this question are overruled. *S. v. Adams,* 245 N.C. 344, 95 S.E. 2d 902; *S. v. Sparrow,* 244 N.C. 81, 92 S.E. 2d 448.

The third question that the defendants present for decision is that the court failed to declare and explain the law arising on the evidence given in the case, as required by G.S. 1-180. Under this question they have and discuss two assignments of error, Nos. 80 and 82. After Amos Maynard, Mamie Luster and Irene Luster had testified in their own behalf, Agent Crawford was called as a witness in rebuttal by the State, and testified as to statements made to him by these three defendants, and he also testified as to what Mamie Luster testified to as a witness at the preliminary hearing. Whereupon, the trial judge, while Crawford was on the stand, carefully instructed the jury that what Amos Maynard told Crawford was admitted against him alone, and was not admitted and not to be considered against Mamie Luster and Irene Luster. The court gave similar instructions as to what Mamie Luster and Irene Luster said. The court went further and said the statement of any one of these witnesses could not be considered upon the guilt of the others, but could be considered as bearing upon their innocence. This statement of the court, while technically incorrect, was not prejudicial to the defendants. These assignments of error are overruled.

The fourth question presented by the defendants is that the court expressed an opinion, as prohibited by G.S. 1-180. Under this question they group and discuss five assignments of error.

Defendants state in their brief that their assignment of error No. 99, as to the charge set forth under this question, is the most severe and acute error committed by the judge in the course of the trial, and that "in reference to this assignment of error, the court, in effect, instructed the jury to disregard certain evidence and to find the defendant Amos Maynard guilty of murder in the first degree."

Assignment of error No. 99 is to the following part of the charge in parenthesis:

"The Court instructs you that if the State has satisfied you beyond a reasonable doubt, the burden being upon the State to so satisfy you, that Amos Maynard planned, conspired and agreed with Monroe Willard, Johnny Luster, Mamie Luster and Irene Luster to rob or attempt to rob Allen Branch with the use or threatened use of the shotgun, or other firearms, that he planned, advised and counseled with Monroe Willard to procure a gun and advised and counseled to rob Branch, that he assisted in blacking Monroe Willard's face in concealing himself at Branch's house, (if he took the car and pushed off Johnny Luster and Monroe Willard or agreed to share in the proceeds of the robbery and in furtherance of such plan and agreement and while attempting to rob the said Branch, Monroe Willard shot and killed Branch, and if the State has so satisfied you beyond a reasonable doubt it will be your duty to return a verdict of Guilty of Murder in the First Degree)."

G.S. 14-17 provides that "a murder . . . , which shall be committed in the perpetration or attempt to perpetrate any . . . robbery . . . or other felony, shall be deemed to be murder in the first degree." *S. v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *S. v. Alston,* 215 N.C. 713, 3 S.E. 2d 11; *S. v. Donnell,* 202 N.C. 782, 164 S.E. 352.

Where a murder is committed in the perpetration or attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. *S. v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533; *S. v. Alston, supra; S. v. Donnell, supra.*

"It is evident that under this statute (G.S. 14-17) a homicide is murder in the first degree if it results from the commission or attempted commission of one of the four specified felonies or of any other felony inherently dangerous to life, without regard to whether the death be intended or not." *S. v. Streeton,* 231 N.C. 301, 56 S.E. 2d 649.

The case was tried upon the theory that if a conspiracy were formed to rob John Allen Branch, and if Monroe Willard were

one of the conspirators, and murdered John Allen Branch in the attempted perpetration of the robbery in the execution of such conspiracy, each and all of the conspirators would be guilty of murder in the first degree. This is a correct principle of law. *S. v. Chavis*, 231 N.C. 307, 56 S.E. 2d 678; *S. v. Bennett*, 226 N.C. 82, 36 S.E. 2d 708; *S. v. Kelly, supra; S. v. Green*, 207 N.C. 369, 177 S.E. 120; *S. v. Stefanoff*, 206 N.C. 443, 174 S.E. 411; *S. v. Bell*, 205 N.C. 225, 171 S.E. 50. In the Bell Case, the Court said: "He (Bell) only furnished the conveyance, and remained a distance from the scene of the crime, nevertheless, he was one of the conspirators."

This Court said in *S. v. Gibson*, 233 N.C. 691, 65 S.E. 2d 508:

"Those who enter into a conspiracy to violate the criminal laws thereby forfeit their independence, and jeopardize their liberty, for, by agreeing with another or others to engage in an unlawful enterprise, they thereby place their safety and freedom in the hands of each and every member of the conspiracy. *S. v. Williams*, 216 N.C. 446, 5 S.E. 2d 314. The acts and declarations of each conspirator, done or uttered in furtherance of the common, illegal design, are admissible in evidence against all. *S. v. Ritter*, 197 N.C. 113, 147 S.E. 733. 'Everyone who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any one of the others, in furtherance of such common design.' *S. v. Jackson*, 82 N.C. 565; *S. v. Smith*, 221 N.C. 400, 20 S.E. 2d 360; *S. v. Summerlin*—'Hole-in-the-Wall' *Case,*—232 N.C. 333, 60 S.E. 2d 322; *S. v. Anderson*, 208 N.C. 771, *loc. cit.* 786, 182 S.E. 643; *S. v. Herndon*, 211 N.C. 123, 189 S.E. 173."

*S. v. Donnell, supra,* was a prosecution upon an indictment charging Donnell and Lee with the murder of one R. B. Andrews. There was an adverse verdict and sentence of death. In finding no error in the trial, the Court said that the following part of the charge, which was assigned as error, was free from reversible error:

" 'Now there is no conspiracy expressly set out in the bill, and it is not necessary that it should have been alleged in the bill, but if the State has satisfied you beyond a reasonable doubt from the evidence that the two defendants Donnell and Lee, prior to the time of the alleged killing of R. B. Andrew, entered into a conspiracy to rob him, and pursuant to that conspiracy so entered into, and while in an attempt to carry out the unlawful purpose, to wit, the robbery of

Mr. Andrew, one of them shot and killed him, the court instructs you, gentlemen of the jury, that both defendants would under those circumstances be guilty of murder in the first degree.' "

The court stated that the defendants are charged in the indictment with the murder of one R. B. Andrews, while the judgment recites they were convicted of murdering one R. B. Andrew as charged in the bill of indictment. The Court said: "The names are patently *idem sonans,* and the slight difference, evidently a typographical error either in the one or the other, is not regarded as material."

The trial court apparently had the *Donnell* case before it, when it charged the jury in this case. The part of the charge assigned as error in this case by defendants' assignment of error No. 99 is free from reversible error, and in it the judge expressed no opinion.

In respect to the other four assignments of error grouped under the fourth question presented by defendants, nothing is shown to indicate that the trial judge offended by expressing an opinion.

The State offered plenary evidence of a conspiracy entered into by the two defendants here, and the other three defendants who pleaded guilty, to rob John Allen Branch, and that in the attempted perpetration of the robbery in execution of the conspiracy, Monroe Willard, one of the conspirators, murdered John Allen Branch. Each of the defendants' assignments of error has been carefully considered, and none shows prejudicial error sufficient to upset the judgments of imprisonment, and to require a new trial.

No Error.