STATE OF NORTH CAROLINA v.
JESSE JAMES ARNOLD AND GEORGE DIXON.

(Filed 1 February 1963.)

**1. Criminal Law §§ 29, 86—**

The fact that the report of a mental hospital is made less than 30 days from the court's order of commitment of defendants for observation for a period of 30 days, does not entitle defendants to a further mental examination, and the denial of defendants' motions for a continuance and to require an examination by a private phyciatrist will not be held prejudical, especially when the court offers defendants' counsel opportunity to have their clients examined at any time during the progress of the trial.

**2. Criminal Law § 86—**

A motion for continuance is addressed to the sound discretion of the trial judge, and the denial of the motion will not be disturbed in the absence of a showing of abuse.

**3. Grand Jury § 1; Constitutional Law § 29—**

The exclusion of persons of defendants' race from the grand jury solely because of race deprives defendants of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, § 17 of the Constitution of North Carolina, but the burden is upon defendants to establish racial discrimination when relied upon by them.

**4. Same—**

On defendants' motion to quash the indictment on the ground of racial discrimination in the selection of the grand jury, the question presented is solely whether members of defendants' race were intentionally excluded solely because of race from serving on the particular grand jury returning the indictment, and the ratio between the races on the grand jury is not determinative of whether members of defendants' race were intentionally excluded solely because of race.

**5. Same—**

Where the evidence discloses that the jury was selected and drawn in strict compliance with statute, G.S. 9-2, G.S. 9-3, G.S. 9-24, and that

members of defendants' race were drawn for jury duty, and defendants offer evidence only as to the ratio between the races on the grand jury and among the inhabitants of the county, without any evidence that any person was excluded from grand jury service solely because of race, the denial of defendants' motion to quash will not be disturbed, defendants having failed to carry the burden of showing facts which would permit a reasonable inference of racial discrimination.

**6. Jury §§ 2, 3—**

Where a special venire is ordered and counsel for one defendant advises that he cannot be present when the jurors for the special venire are drawn, but counsel for the other defendant is present pursuant to a request by the court that he represent both of defendants, motion of counsel for the other defendant to quash on the ground that neither he nor the defendant represented by him were present when the jury was drawn is properly denied.

**7. Jury § 3—**

Objections that the finding of the judge as to the ratio of people of defendants' race on the trial jury was based upon the unsworn statement in open court of the sheriff, is untenable when it is made to appear that the jury panel was in the courtroom and in view of the court, counsel, and all other persons present.

**8. Same—**

In a prosecution for a capital crime the court has discretionary power to allow the State to challenge the jurors for cause on the ground of conscientious scruples against capital punishment.

**9. Criminal Law § 159—**

Exceptions and assignments of error not set out in the brief are deemed abandoned. Rule of Practice in The Supreme Court No. 28.

**10. Criminal Law § 71—**

Where the court finds, upon supporting evidence, that the confession of each of defendants was voluntarily made and allows the confessions to be introduced in evidence under instructions to the jury that the confession of the one was not to be considered against the other, no error is made to appear.

**11. Criminal Law § 56—**

It is competent for a physician found by the court to be an expert to testify from his personal examination of the deceased as to the cause of death.

**12. Criminal Law § 42—**

The admission in evidence of the boots of defendant, properly identified, and a gun, identified as the one connected with the commission of the crime, is not error.

**13. Criminal Law § 161—**

Where the court repeatedly instructs the jury that the burden was on the State to prove defendants' guilt beyond a reasonable doubt, and that

if the jury had a reasonable doubt as to their guilt the jury should acquit defendants, the fact that the court also instructs the jury that they should render a verdict which "substantially speaks the truth," though error when considered out of context, does not justify a new trial when, considering the charge as a whole, it clearly appears that the court presented the law of the case to the jury in such a manner as to leave no reasonable cause to believe that the jury was misled or misinformed by the erroneous excerpts.

**14. Homicide §§ 28, 29—**

Where all of the evidence tends to show that deceased was killed in the perpetration of a robbery from his person by both defendants, G.S. 14-17 there is no evidence of guilt of murder in the second degree or manslaughter, and the court properly limits the jury to a verdict of guilty as to both defendants of murder in the first degree, or a verdict of guilty of murder in the first degree with recommendation of life imprisonment, or a verdict of not guilty as to both defendants, the court having previously charged the jury that they had the unbridled discretion in rendering their verdict to recommend that the punishment for both defendants, or either one of them, should be imprisonment for life.

APPEAL by Jesse James Arnold and George Dixon from *Burgwyn, Emergency Judge,* at 4 December 1961 Criminal Term of LENOIR.

Criminal prosecution tried upon a joint indictment charging that Jesse James Arnold and George Dixon on 10 September 1961 "unlawfully, willfully, and feloniously premeditatively and deliberately and of their malice aforethought, did kill and murder George T. McArthur, while engaged in the perpetration of the crime of robbery." G.S. 14-17; G.S. 15-144.

Each defendant is a Negro. After a denial by the court of a separate motion made in apt time (G.S. 9-26) by each defendant to quash the indictment on the ground that Negroes were intentionally excluded solely by reason of their race from the grand jury that returned the joint indictment against them, each defendant entered a plea of Not Guilty. Verdict: "The defendant George Dixon is guilty of murder in the first degree without the recommendation of mercy and that the defendant Jesse James Arnold is guilty of murder in the first degree without the recommendation of mercy, or recommendation that punishment be fixed at life imprisonment."

From a sentence of death entered on the verdict against each defendant, each defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Ralph Moody for the State.*
*J. Harvey Turner for defendant appellant Jesse James Arnold.*
*Fred W. Harrison for defendant appellant George Dixon.*

PARKER, J.   The State's evidence shows: George T. McArthur, a man 68 years old, and his 62-year-old wife owned and operated a little store on Highway #11 about eight miles north of the city of Kinston. It is about "a stone's throw" from the back door of the store to the house behind the store where they lived. About "dusky dark" on Sunday, 10 September 1961, George T. McArthur went to the store from his home.

About 7:00 o'clock p.m. on this night Jesse James Arnold and a tall Negro entered the McArthur store. Arnold was carrying a shotgun. Both men had on boots and brown khaki pants, but were shirtless and without hats. Three shots were heard in the store. About 15 minutes later these two men came out of the store with some big object in their hands. They went across the highway into a field. A little later they came back across the road, and went towards a hog pen. John Rouse, who lives across the highway from the McArthur store, told them, "You better look out for the hogs, those hogs might get you." One of the men replied, "How well I know, they are my daddy's hogs." The hogs were owned by Glenn Arnold, father of the defendant Arnold.

A short time after this, Ruby McArthur, wife of George T. McArthur, went to the store, as he had not returned home. The lights of the store were on, and the front and back doors were open. When she went in the back door of the store, she saw her husband lying dead on the floor in a pool of blood. Blood was spattered everywhere, all over the walls and ceiling, the back screen door, the back of the meat case, the end of the show case, and all over the freezer. The cash register was gone. Two gun shells were lying between the counter and the front door. She telephoned the sheriff's office.

Shortly after midnight on this night, John D. Edwards, an agent for the State Bureau of Investigation, talked with Jesse James Arnold in the commissioners' room in the courthouse at Kinston. Edwards made Arnold no promises, and used no force or threats. Defendant Arnold told him in substance: About 5:00 o'clock p.m. on 10 September 1961 he and defendant George Dixon were at Johnny Edwards' place (not the agent John D. Edwards). They talked about various things. Dixon said, "Where can we find some money?" He replied, "he knew an old man that he had known all of his life, that had a lot of money, and that there was not but two of them there." About 6:30 p.m. he and Dixon went to his home. There they discussed further the getting of money from George T. McArthur. He and Dixon put on boots and khaki pants, but no shirts. He got his pump gun, and gave a single barrel shotgun and two gun shells to Dixon. His wife

"tried to get him not to go do the robbing," but he and Dixon left and went to the McArthur store. When they arrived, two or three young girls were in the store. They stood outside until the girls left. Then Dixon went to the back of the store, and entered it. He heard a gun fire in the store, and immediately went in the front door. Dixon and McArthur were tussling together, and McArthur was bloody. Dixon shot McArthur, and then hit him with the stock of the gun. McArthur fell, and Dixon shot him again on the floor. He went out of the store, and Dixon came out behind him with "an adding machine" and a box. Later they beat the box open. They found no money in it. Then they threw the box and "the adding machine" in a sand hole in front of Johnny Edwards' place. He and John Rouse had words about the hogs. This is similar to the testimony of John Rouse.

The S. B. I. agent Edwards saw defendant George Dixon about 3:00 o'clock a.m. on 11 September 1961 in the sheriff's office in Kinston. At that time Dixon was so much under the influence of intoxicants in the opinion of Edwards that he did not talk to him. About 7:00 o'clock p.m. on 11 September 1961 in the commissioners' room in the courthouse at Kinston he had a conversation with Dixon. He made him no promises. He told him who he was. Dixon told him in substance: During the afternoon of 10 September 1961 he and defendant Arnold were together at various places. About 5:00 o'clock p.m. they went to Arnold's home. There Arnold said, "George, I know where there is some money at." He said to Arnold, "How are you going to get it?" Arnold replied, "We'll wait until after it gets dark and go down to the store and get the old man out, and we will get the money." He replied, "Let's don't do that, Jesse." Jesse replied, "There ain't going to be nothing to it. I'm going to carry a gun." They changed clothes, putting on boots, khaki pants, and taking off their shirts. Jesse took a shotgun off the rack, and gave him a single barrel, twelve-gauge shotgun and two shells. Jesse's gun was an automatic. They loaded the guns, and went to the store. Two white girls were in the store with the old man. When the girls left, he went in the back door of the store. The old man was standing near the counter. He was holding the shotgun back of him. He thought the old man must have seen the gun, because he ran at him, shoved him back, swung at him with a knife, and knocked him up against the building. At that time defendant Arnold came in the front door, and shot the old man. The old man fell up against the wall by the back door. Then Jesse hit the old man with his gun, and he hit the old man. Jesse shot the old man again, and he fell down on the floor on his back. He didn't move or make any noise, and Jesse and he knew he was dead. Jesse searched

the old man, and found no money. He searched him, and found three quarters. Jesse tried unsuccessfully to open the cash register. He took Jesse's gun, and Jesse took the cash register and the adding machine, and they left. Afterwards they broke open the cash register and the adding machine, found no money in either, and threw them in a sand hole.

In the opinion of John Boyd, an agent of the State Bureau of Investigation, assigned to the ballistics department, the gun shells found in the McArthur store were fired by the pump gun, which was the gun Arnold had.

The body of George T. McArthur had a jagged wound on the top of the skull, a gunshot wound through his left arm about the size of a silver dollar that penetrated his chest, and other wounds. In the opinion of Dr. C. E. Cling, who examined the dead body, George T. McArthur was killed by a shotgun blast at close range.

The record shows that Ruby McArthur identified during the trial the cash register, which she observed was missing when she entered the store. This cash register was marked as State Exhibit 1. The record shows that on the morning of 11 September 1961 Paul Horace Dawson went to a sand hole near Johnny Edwards' place and found in it the adding machine, identified as State Exhibit 1. It was in about a foot of water. He brought it back and turned it over to S. B. I. Agent Edwards. Why State Exhibit 1 was called a cash register by Mrs. McArthur, and why the same exhibit was called an adding machine by Paul Horace Dawson the record does not disclose.

The defendants offered no evidence.

Each defendant assigns as error the overruling of his motion for a continuance and to the denial by the court of his request for an order requiring a mental examination of him by a private practicing psychiatrist and psychologist. In denying this request the court said: "The court now offers to counsel an opportunity to get any private psychiatrist they desire and have their clients examined, at any time during the progress of this trial." These assignments of error are overruled.

On 16 September 1961 Albert W. Cowper, resident judge of the 8th judicial district, appointed J. Harvey Turner, a member of the Lenoir County bar, as counsel to represent defendant Jesse James Arnold in this case—Arnold being without means to employ counsel. Lenoir County is in the 8th judicial district. G.S. 15-4.1. On the same date for the same reason Judge Cowper appointed Fred W. Harrison, a member of the Lenoir County bar, as counsel to represent defendant George Dixon in this case. The indictment here was found by the

grand jury a true bill at the October 1961 Term of Lenoir County superior court.

On 22 October 1961 Judge Cowper, upon motion of J. Harvey Turner, attorney for defendant Jesse James Arnold, entered an order, pursuant to G.S. 122-91, committing defendant Arnold to the State Hospital for mentally disordered persons at Goldsboro, North Carolina, for a period of 30 days for observation as to his mental condition. The order further provided that the superintendent of the hospital shall file on or before 1 December 1961 a full report of the examination made at the hospital in the office of the clerk of the superior court, and furnish a copy of it to the prosecuting officer for the State and a copy to J. Harvey Turner, counsel for defendant Arnold.

Upon motion of Fred W. Harrison, counsel for defendant George Dixon, Judge Cowper entered a similar order as to defendant George Dixon.

The reports made by the State Hospital for mentally disordered persons at Goldsboro as to the mental condition of the defendants are not in the record. The separate motions for a continuance and to require a mental examination by a private practicing psychiatrist and psychologist are substantially identical. The sole reason stated in each motion for a further mental examination is because the report from the State Hospital is dated 20 November 1961, and Judge Cowper's order provided that each defendant should be kept for observation for a period of 30 days. Defendants have not shown that they were prejudiced by the refusal of their request that the court order a further mental examination. They offered no evidence during the trial.

Their motions for a continuance of the case to another term of court for trial was addressed to the sound discretion of the trial judge. There is nothing to show the judge abused his discretion in denying the motions. *S. v. Culberson,* 228 N.C. 615, 46 S.E. 2d 647.

Each defendant, a Negro, assigns as error his motion, made before pleading to the indictment, to quash the indictment on the ground that Negroes were intentionally excluded by reason of their race from serving on the grand jury which found the indictment in the instant case.

In support of the motions the defendants offered evidence as follows: In 1961 the tax records of Lenoir County showed 12,250 white persons and 4,819 Negroes; 5,583 white men were listed for poll tax and 2,499 Negro men. This was testified to by Milton Guy Williams, tax supervisor for Lenoir County. Williams was asked by the trial judge if he knew anything about the constitution of the grand jury

here this week. Williams replied he did not. The judge stated: "Well, I do. I saw it."

Defendants then called as a witness John S. Davis, clerk of the superior court of Lenoir County. He testified in substance: He has been clerk over 24 years. He remembers during that time one Negro having served a term upon the grand jury, and another Negro was placed on it but excused when it was discovered she lived in another county. Grand juries are selected at the January and August terms of court. He is furnished a list of the jurors drawn for each term of court which has jury trials. The average number of jurors drawn for jury service is from 30 to 35. On the list furnished him there are sometimes three or four Negroes, and sometimes none. At one time he saw four or five Negroes on the jury panel. When a grand jury is to be drawn, the name of each juror on the jury panel furnished him is put on a separate slip of paper in a box in open court, and a name is drawn out in open court by a child under 10 years of age. This continues until the 18 grand jurors are drawn. So far as he knows, Negroes have not been systematically excluded from serving on grand and petit juries in Lenoir County.

From this evidence offered by defendants the trial judge found as a fact that Negroes had not been systematically excluded from service on grand and petit juries in Lenoir County.

It is to be noted that counsel for defendants did not put into evidence a list of grand jurors serving in Lenoir County in the past, nor did they put into evidence the list of the grand jurors that found the present indictment—though such records were available in the office of the clerk of the court. It appears from the record that the grand jury that found the indictment at the October 1961 Term was the grand jury at the trial December 1961 Term, because the clerk testified a grand jury is drawn at the January and August Terms. The tax supervisor, when asked if he knew the constitution of the grand jury at the trial Term, replied he did not. The judge replied: "Well, I do. I saw it." The statement by the judge would seem to indicate there was a Negro or Negroes on the grand jury. Yet the solicitor for the State, if such was a fact, did not show it. Whether there was a Negro or Negroes on the grand jury that found the present indictment, we do not know from the record before us.

N. C. G.S. 9-2 provides that the jury list shall be copied on small scrolls of paper of equal size and put into the jury box. N. C. G.S. 9-3 provides that at least twenty days before a term of the Superior Court, the Board of County Commissioners shall cause to be drawn from the jury box by a child not more than ten years of age the required num-

ber of scrolls, and the persons who are inscribed on such scrolls shall
serve as jurors at the term of the Superior Court next ensuing such
drawing. It appears that the jury list furnished Davis, clerk of the
superior court, was furnished, pursuant to these statutes, by the
Board of County Commissioners of Lenoir County. Defendants have
offered no evidence of any exclusion of Negroes from the jury box of
Lenoir County. Their evidence affirmatively shows that sometimes
three or four Negroes are drawn from the jury box of Lenoir County
for service as grand and petit jurors.

It futher affirmatively appears from the testimony of defendants'
witness John S. Davis that the grand jury in Lenoir County is drawn
from a box containing the names of the jury panel in accordance with
N. C. G.S. 9-24.

The Fourteenth Amendment to the Federal Constitution forbids
any discrimination against Negroes in the selection of a grand jury,
and the burden is on the defendants here to establish the discrimina-
tion against their race. *Akins v. Texas,* 325 U.S. 398, 89 L. Ed. 169;
*Fay v. New York,* 332 U.S. 261, 91 L. Ed. 2043; *Cassell v. Texas,* 339
U.S. 282, 94 L. Ed. 839; *S. v. Covington,* 258 N.C. 495, 128 S.E. 2d 822;
*S. v. Perry,* 248 N.C 334, 103 S.E. 2d 404; *Miller v. State,* 237 N.C.
29, 74 S.E. 2d 513.

Former errors cannot invalidate future trials. Our problem is wheth-
er or not Negroes were intentionally excluded solely by reason of
their race from serving on the grand jury that found the indictment
against defendants in the instant case. *Brown v. Allen,* 344 U.S. 443,
97 L. Ed. 469; *Cassell v. Texas, supra.*

This Court speaking by Ervin J. (now U. S. Senator) in *Miller v.
State, supra,* said:

> "The Fourteenth Amendment to the Constitution of the United
> States does not confer upon a Negro citizen charged with crime
> in a state court the right to demand that the grand or petit jury,
> which considers his case, shall be composed, either in whole or in
> part, of citizens of his own race. All he can demand is that he be
> indicted or tried by a jury from which Negroes have not been
> intentionally excluded because of their race or color. In conse-
> quence, there is no constitutional warrant for the proposition that
> a jury which indicts or tries a Negro must be composed of persons
> of each race in proportion to their respective numbers as citizens
> of the political unit from which the jury is summoned. [Citing
> numerous cases from the U. S. Supreme Court and from this
> Court in support of the statement.]"

This Court in an unbroken line of decisions stretching back for sixty years has held, by virtue of "the law of the land" clause embodied in the Declaration of Rights, Article I, section 17, of the North Carolina Constitution, that the indictment of a Negro defendant by a grand jury from which members of his race have been intentionally excluded solely because of their race is a denial of his rights to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and of his rights under Article I, section 17, of the North Carolina Constitution. *S. v. Peoples,* 131 N.C. 784, 42 S.E. 814; *S. v. Speller,* 229 N.C. 67, 47, S.E. 2d 537; *Miller v. State, supra; S. v. Perry,* 248 N.C. 334, 103 S.E. 2d 404; *S. v. Perry,* 250 N.C. 119, 108 S.E. 2d 447; *S. v. Covington,* 248 N.C. 495, 128 S.E. 2d 822.

Defendants' motions to quash the indictment are overruled, for the simple reason they have failed to carry the burden of showing facts which would permit a reasonable inference of intentional or purposeful racial discrimination against Negroes in drawing and selecting the grand jury which returned the indictment against them in the instant case.

After each defendant had entered a plea of not guilty, the court, upon motion of the defendants that a jury to try the case be drawn from another county in order that there might be a fair and impartial trial, which motion was consented to by the State, and acting under the provisions of N. C. G.S. 1-84 and N. C. G.S. 1-86, entered an order for 150 jurors to be drawn from the jury box of Duplin County in an adjoining judicial district, and to appear at the courthouse in Kinston on a specified date. The jury apparently was duly and properly drawn in Duplin County in the presence of Fred W. Harrison, counsel for defendant George Dixon, and others. When the jurors appeared in court, the defendant Arnold moved that the jury panel from Duplin County be quashed on the ground that defendant Arnold and his counsel, J. Harvey Turner, were not present when these jurors were drawn from the jury box in Duplin County. The trial judge found as facts that J. Harvey Turner told him he could not be present when the jurors from Duplin County were drawn; that the court requested Fred W. Harrison, counsel for defendant Dixon, to represent both defendants when these jurors were drawn from the box in Duplin County; that Harrison consented to do so, and was in fact present when these jurors were drawn from the box. Whereupon, the court denied defendant Arnold's motion. Defendant Arnold assigns this as error. This assignment of error is overruled. There is nothing in the record to indicate that defendant Arnold or his counsel objected to the drawing of

the jurors in Duplin County in the absence of either or both, until after it had been done. Under the facts here, we do not think that any of defendant Arnold's substantial rights were affected by the absence of himself and his counsel during the earlier proceedings in Duplin County. He has not shown he was prejudiced in any way by the fact that he and his counsel were not present in Duplin County when the jurors for his trial were drawn from the box. 23 C.J.S., Criminal Law, p. 890, and note 70.

When the 150 jurors drawn in Duplin County, from which panel the trial jury in the instant case was selected and impaneled, appeared in court, the trial judge found as a fact that these jurors were composed of white people and Negroes in about the ratio of 60% to 40%. Defendants assign as error the finding of the judge on the ground that it was based upon the unsworn statement in open court of the sheriff of Duplin County to the judge. The jury panel from Duplin County was in the courtroom where the defendants, their counsel, the judge, and everybody present in the courtroom could see them. Defendants have not shown how they were prejudiced in any way by the judge's finding of fact, and it is impossible to see how they were prejudiced. This assignment of error is overruled.

Each defendant assigns as error the court's allowing the State on the *voir dire* to challenge for cause a number of jurors on the jury panel on the ground that they had conscientious scruples against the infliction of capital punishment. These assignments of error are overruled, for the simple reason that the court, in its discretion, could allow the State to challenge such jurors for cause for incompetency to serve in the case and sustain the challenge, it appearing that such jurors were disqualified. *S. v. Vick,* 132 N.C. 995, 43 S.E. 626; *S. v. Vann,* 162 N.C. 534, 77 S.E. 295.

Defendants in their separate briefs make no contention that the confession of each defendant to S. B. I. Agent Edwards was incompetent in evidence. Exceptions in the record not set out in appellants' briefs, or in support of which no argument is stated or authority cited, will be taken as abandoned by them. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810, where a legion of cases applying the rule are cited; *S. v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781. However, we have carefully considered the circumstances under which each confession was made as shown in the record, and it appears each confession was made freely and voluntarily without any coercion, force, threats, rewards, or offers of reward, and each confession was properly admitted in evidence. The trial judge instructed the jury that the confession of Dixon was not evidence to be con-

sidered against Arnold, and the confession of Arnold was not evidence to be considered against Dixon. Defendants did not request fuller instructions.

The assignments of error of each defendant that Dr. C. E. Cling was permitted, over their objections, to testify as to the cause of George T. McArthur's death are overruled. Defendants stipulated Dr. C. E. Cling is a practicing medical doctor. Dr. Cling testified as to his experience in the practice, and that he holds a degree of doctor of medicine. The court held he was a medical expert. He examined the dead body of George T. McArthur in a funeral home. His testimony as to the cause of McArthur's death is competent. *S. v. Mays,* 225 N.C. 486, 35 S.E. 2d 494; *S. v. Messer,* 192 N.C. 80, 133 S.E. 404.

Defendant Arnold's assignment of error as to the admission in evidence against him of a pair of boots and of a pump gun marked State Exhibit 16 is overruled. This assignment of error merits no discussion.

The court instructed the jury:

> "So your duty is to consider the evidence which you have heard in this case, from the beginning of it to the final witness who testified in the case, and to glean from that evidence what you deem to be the truth of the matter, and to apply to what you deem to be the truth of the matter from the evidence in the case, the law which will be hereafter given you by the Court; (and upon that render a verdict which in your conscience and mind substantially speaks the truth.) "

Defendants assign as error the part of the charge in parentheses.

Immediately thereafter the court instructed the jury as to presumption of innocence and gave a detailed definition of a reasonable doubt. Defendants do not challenge this part of the charge. Then the court instructed the jury several times that the State must establish defendants' guilt beyond a reasonable doubt before the jury could convict the defendants, and if the jury had a reasonable doubt as to their guilt, they should acquit them.

Defendants assign as error that the court near the end of its charge instructed the jury it was their duty "to render a verdict in this case which according to the evidence in the case and the law which has been and will be given you by the court, that substantially speaks the truth." Then the court went on to charge: "The word 'verdict' comes from two Latin words, *vere* meaning truly, and *dictum* meaning to speak; therefore, let your verdict be a true saying, let your verdict speak the truth." At practically the end of the charge the court instructed the jury "to render a verdict which substantially speaks the truth." Defendants assign this as error.

Each defendant contends in his brief that the court's charge instructed the jury to return a verdict which substantially speaks the truth, which is "a strong departure from the rule which requires that the defendant in any criminal case be proven guilty and found guilty beyond a reasonable doubt by the jury."

These assignments of error are overruled. The excerpts from the charge "render a verdict which in your conscience and mind substantially speaks the truth" and "to render a verdict in this case which* * *substantially speaks the truth," when considered out of context, are erroneous in a criminal case at least, for they are susceptible of the construction that a verdict in a criminal case can be found upon a slight preponderance of the evidence, or upon a slighter degree of evidence than beyond a reasonable doubt. However, these excerpts from the charge will not be held prejudicial, even though they are erroneous when read out of context, because it is our opinion, and we so hold, that it clearly appears the charge considered as a whole presented the law of the case to the jury in such a manner as to leave no reasonable cause to believe that the jury was misled or misinformed by these erroneous excerpts, but that they must have plainly understood from the charge that the burden of proof rested upon the State to establish the guilt of the defendants from the evidence beyond a reasonable doubt, and if it had not done so, or if they had a reasonable doubt of the defendants' guilt, they should render a verdict of not guilty as to both defendants. Strong's N. C. Index, Vol. I, Appeal and Error, sec. 42, and Strong, Supplement to Vol. I of his Index, Appeal and Error, sec. 42, where in both volumes a great number of cases are cited which support the text.

Barnhill, J., speaking for the Court in *Vincent v. Woody,* 238 N.C. 118, 76 S.E. 2d 356, said:

"Ordinarily the presiding judge must instruct the jury extemporaneously from such notes as he may have been able to prepare during the trial. To require him to state every clause and sentence so precisely that even when lifted out of context it expresses the law applicable to the facts in the cause on trial with such exactitude and nicety that it may be held, in and of itself, a correct application of the law of the case would exact of the *nisi prius* judges a task impossible of performance. The charge is sufficient if, when read contextually, it clearly appears that the law of the case was presented to the jury in such manner as to leave no reasonable cause to believe that it was misled or misinformed in respect thereto."

N. C. G.S. 14-17 provides in part: "A murder* * *which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death." This statute has a proviso to the effect that "if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison."

The defendants assign as error this part of the charge:

> "Now there is no conspiracy expressly set out in the bill of indictment and it is not necessary that it should be so included in the bill of indictment, and it is not necessary that it should have been alleged in the bill; but if the State has satisfied you beyond a reasonable doubt from the evidence that these two defendants Dixon and Arnold prior to the time of the alleged killing of Mr. McArthur entered into a conspiracy to rob him, and pursuant to their conspiracy so entered into and while in the attempt to carry out an unlawful purpose, to wit, the robbery of Mr. McArthur, one of them shot and killed him, the other being present, the Court instructs you, Gentlemen of the Jury, that both of the defendants under these circumstances would be guilty of murder in the first degree.

> "I further charge you, without regard to the existence or absence of a conspiracy, it is a settled principle of law apparently applicable to the facts in this instant case, that where two persons aid and abet each other in the commission of a crime, provided you are satisfied from this evidence and beyond a reasonable doubt that they did so, both being present, both are principals and equally guilty."

This challenged part of the charge is taken practically verbatim from the case of S. v. Donnell, 202 N.C. 782, 164 S.E. 352, where the facts are strikingly similar to the facts in the instant case, except that in the Donnell case the defendant Lee testified there was no conspiracy or intention on his part to rob the deceased. This statement of law applicable to the facts in the instant case as charged by the trial court also finds support in S. v. Maynard, 247 N.C. 462, 101 S.E. 2d 340; S. v. Brooks, 228 N.C. 68, 44 S.E. 2d 482; S. v. Kelly, 216 N.C. 627, 6 S.E. 2d 533; S. v. Alston, 215 N.C. 713, 3 S.E. 2d 11; S. v. Stefanoff, 206 N.C. 443, 174 S.E. 411.

It is said in S. v. Maynard, supra:

> "Where a murder is committed in the perpetration or attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces

it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. *S. v. Kelly*, 216 N.C. 627, 6 S.E. 2d 533; *S. v. Alston, supra; S. v. Donnell, supra.*"

The assignments of error to the above quoted part of the charge are overruled, for the reason that this challenged part of the judge's charge is correct and is in conformity with many decisions of this Court.

Each defendant assigns as error this part of the charge:

"As I have told you, on the evidence in this case and the law as the Court understands the law to be and as the Court has explained it to you, you will be permitted to render one of three verdicts: you may render a verdict of guilty as to both defendants of murder in the first degree, you may render a verdict as to both defendants of guilty of murder in the first degree, recommending that their punishment be fixed at life imprisonment, or you may find both defendants not guilty."

These assignments of error are overruled.

Considering the confession made by each defendant and the other evidence of the State strongly supporting the confession of each defendant, there is no evidence of murder in the second degree or of manslaughter. The confession of each defendant is to the effect that prior to the time of the killing of George T. McArthur, each defendant entered into a conspiracy to rob him, and pursuant to that conspiracy so entered into, each defendant armed himself with a shotgun and went to George T. McArthur's store, and while in an attempt to rob George T. McArthur, pursuant to the conspiracy so entered into, one · of them shot and killed him. The confession of each defendant finds strong support in the testimony of other witnesses for the State. Considering all this evidence for the State—defendants offered no evidence —the only verdict based on the evidence that the jury could find was that both defendants were guilty of murder in the first degree or both were not guilty. There is no evidence tending to show that one defendant was guilty and one defendant was not guilty.

The judge carefully instructed the jury that if they found the defendants guilty of murder in the first degree they had the unbridled discretion in rendering their verdict to recommend that the punishment for both defendants, or either one of them, should be imprisonment for life in the State's prison, and if they did so recommend, the punishment would be in accordance with their recommendation. That there are no conditions, no qualifications, no limitations imposed as to their right to make such a recommendation.

The other assignments of error to the charge have been given careful consideration, and all are overruled. They do not merit discussion.

All the assignments of error of each defendant are overruled. After a careful consideration of the entire record and the brief of each defendant, we find in the trial below no error sufficient to justify a new trial.

No error.