STATE OF NORTH CAROLINA v. VERNON WALLACE RICH

No. 45

(Filed 18 November 1970)

1. **Homicide §§ 21, 25— murder committed in perpetration of robbery — instructions — sufficiency of evidence**

　　In this homicide prosecution, the State's evidence permitted a legitimate inference that the murder was committed in the perpetration of a robbery and supported the court's statement of the State's contentions and its instruction that such a murder "will be deemed murder in the first degree," where the State's evidence tended to show that defendant and his accomplices invited the victim into their automobile ostensibly to take him home in return for beer which the victim had bought, that an accomplice struck the victim in the head with a bottle and defendant shot him in the back of the head with a pistol, that when it was discovered the victim was still alive defendant fired a second shot into his head, that defendant and his accomplices dug a grave, took from the victim's body a wallet containing $13.00, a watch, cigarette lighters and a small amount of change, and that they then buried the body.

2. **Homicide § 18— evidence of premeditation and deliberation**

　　In this homicide prosecution, want of provocation, absence of excuse, lack of justification and defendant's statement that he shot deceased "to prove a point" permit a legitimate inference of premeditation and deliberation.

APPEAL by defendant from *Crissman, J.*, May 10, 1969, Criminal Session of ROWAN.

Defendant was tried upon a bill of indictment charging that John Lawrence Clark, James L. Blumel and Vernon Wallace Rich, late of Rowan County, on the 16th day of October 1968, with force and arms, at and in said county, feloniously, willfully and of malice aforethought, and with premeditation and deliberation, did kill and murder one Clint Aiken Cheney.

The State's evidence—defendant offered none—is narrated below.

Defendant and the other two men named in the indictment arrived in Rowan County from California on the evening of 15 October 1968. The three men went to the home of John Lawrence Clark's parents where they were greeted and entertained. About 11:15 p.m. the three men and Clifford Clark, a younger brother of John Lawrence Clark, went to the Eagle's Bar and Restaurant in Salisbury to drink beer. There the defendant Vernon Wallace Rich first encountered Clint Aiken (Chuck) Cheney and remarked concerning him, "There's one in every crowd." After leaving the Eagle's Bar and Restaurant the four men returned to the home of Clark's parents where they spent the night.

On the following day these three men in company with Clark's father and his brother Clifford went down Brinkle Ferry Road to the river where they fished and drank beer. While there they explored an old cemetery and defendant mentioned the possibility that treasure might be found in the graves, some of which were 200 years old. It began raining and the group drove to a little bar called "Jack's" where they drank beer. They left the tavern and returned to the Clark home where defendant Rich put shovels and picks and an ax in the car and continued to talk about robbing the graves. It was now "quite late at night." John Lawrence Clark and his brother disapproved of the grave-robbing proposal and decided to get defendant away from the house and talk him out of it. They got defendant in the car and drove up Main Street toward Eagle's Bar and Restaurant where they planned to get beer. As they pulled into the bar Clint Aiken Cheney was walking out of it. Defendant remarked, "There's the queer I was talking to last night." They got out of the car and defendant began talking with Cheney who said he was waiting for a cab to take him home. Defendant asked Cheney where he lived and suggested that if Cheney bought some beer they would take him home. Cheney gave Jim Blumel $5.00 and he bought a

case of beer and all of them got in the car. John Lawrence Clark was driving; defendant Vernon Wallace Rich sat on the left rear seat behind the driver; Jim Blumel sat on the right rear seat and Clint Aiken Cheney sat on the right front seat. They drove out of town, and as they rolled along Brinkle Ferry Road toward the old cemetery Jim Blumel struck Cheney in the back of the head with a bottle. Defendant then shot Cheney in the back of the head with a .22 caliber pistol. Cheney slumped in the front seat and defendant instructed Clark to continue driving. About one-half mile later Cheney began to lean forward whereupon Blumel grabbed his shoulders to pull him back and commented that he was still alive. Defendant then fired a second shot into Cheney's head. The three men continued to drive until they reached the old cemetery at the end of Brinkle Ferry Road. They took their tools into the cemetery and dug a shallow grave. They returned to the car for Cheney's body, opened the door, and defendant pulled the body from the car and proceeded to take all Cheney's belongings, consisting of his wallet containing $13.00 in cash, a watch, cigarette lighters and a small amount of change. Then they carried the body into the cemetery, placed it in the shallow grave and covered it up. Defendant then cut bushes and covered the grave with them.

The three men then returned to the Clark home where they cleaned the car and burned their bloody clothing in a trash barrel at the edge of the woods. Cheney's belongings, with the exception of the money and the watch which they kept, were also thrown in the trash barrel and burned. They then prepared eggs and toast, and a controversy arose over the way the food was being eaten. During the controversy defendant, in an angry voice, said: "I didn't shoot that man just to be shooting him. I shot him to prove a point."

The next morning defendant, Jim Blumel, John Lawrence Clark and Clark's father left for Lenoir and Blowing Rock to visit relatives. They returned home about 3:00 a.m. on Friday morning and left later that day for Florida.

On Sunday afternoon, October 20, 1968, while visiting the old Reed Cemetery, Coleman J. Williams observed fresh dirt on an old grave covered with wild cherry limbs. It looked suspicious to him and he reported it to the sheriff. The sheriff's man excavated the fresh dirt and discovered the body of Clint Aiken Cheney. Police officers later found Cheney's cigarette lighters, key case and wallet in the trash barrel at the Clark home.

Cheney's watch was found in the possession of George Clark (a brother of John Lawrence Clark). The officers then talked with John Lawrence Clark who made a full confession and later testified for the State in this case, relating events substantially as hereinabove narrated. Defendant Rich, John Lawrence Clark and Jim Blumel were thereupon indicted for the murder of Clint Aiken Cheney. The record here does not reveal what disposition was made of the case against Clark and Blumel. The jury convicted defendant Rich of murder in the first degree with a recommendation of life imprisonment. Judgment was pronounced accordingly and defendant appealed to the Supreme Court.

*Clinton Eudy, attorney for defendent appellant.*

*Robert Morgan, Attorney General; Millard R. Rich, Jr., Assistant Attorney General; James F. Bullock, Deputy Attorney General, for the State.*

HUSKINS, Justice.

[1]    The sole question involved on this appeal is stated in defendant's brief as follows: "Did the trial court err in submitting this case to jury upon the theory of the defendant's guilt of first-degree murder in that he committed a homicide in perpetrating a robbery."

The evidence discloses that defendant and his accomplices invited the victim into their automobile ostensibly to take him home in return for the case of beer which the victim had bought. They left town on the Brinkle Ferry Road traveling toward the old cemetery. Jim Blumel struck the victim in the head with a bottle and defendant shot him in the back of the head with a .22 caliber pistol. A minute or two later, when it was discovered that the victim was still alive, defendant fired a second shot into Cheney's head. These murderous acts were committed as if by prior agreement and understanding and without provocation, excuse or justification. After they reached the old cemetery at the end of Brinkle Ferry Road, entered it and dug a shallow grave, defendant and his accomplices returned to the car for Cheney's body and, at that time, took his wallet containing $13.00 in cash, a watch, cigarette lighters and a small amount of change. They buried the body but kept Cheney's belongings. Items deemed worthless were later burned, but the money and the watch were kept and converted to their own use.

The foregoing evidence permits a legitimate inference that the murder was committed in perpetration of a robbery, and murder so committed is "deemed to be murder in the first degree." G.S. 14-17. Hence it was not error prejudicial to defendant for the court to give the State's contentions and to charge the jury that a murder committed in the perpetration of a robbery "will be deemed murder in the first degree."

[2] Moreover, want of provocation, absence of excuse, lack of justification, and defendant's statement that he shot Cheney "to prove a point"—all permit, if not compel, a legitimate inference of premeditation and deliberation. *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 541 (1970).

Defendant's guilt is conclusively shown by competent evidence upon which no other rational conclusion could have been reached by the jury. He has failed to bring to our attention any error injuriously affecting his rights, and we have discovered none. For such a callous murder the jury might well have returned a verdict which would have required a death sentence. His assignment of error must fail for lack of merit.

No error.