STATE OF NORTH CAROLINA v. WILLIAM S. JESSUP

No. 114

(Filed 10 July 1971)

1. Executors and Administrators § 6— title to property of intestate

Upon the death of decedent without a will, the title to his real estate vested *eo instanti* in his heirs and the title to his personal estate vested in his personal representative.

2. Executors and Administrators § 6— estate of decedent

The estate of a deceased person is not an agency for holding title to property, but is the property itself, to be administered by a personal representative commissioned by the court.

3. Executors and Administrators § 6; Trusts § 14— possession of property belonging to estate — constructive trust — executor de son tort

One who takes property belonging to an estate during the interval between decedent's death and the qualification of the personal representative is a constructive trustee for the benefit of the administrator and must account to him; if he does not account to the administrator, he becomes executor *de son tort*. G.S. 28-4.

4. Executors and Administrators § 8— recovery of estate property

G.S. 28-69 provides an immediate remedy by which a personal representative may examine any party if he has reasonable grounds to believe a person, firm or corporation has possession of any property belonging to the estate, and the clerk may force delivery or attach for contempt for failure to deliver.

5. Executors and Administrators § 8; Trusts § 11— refusal to account to administrator — breach of trust

One who takes and refuses to account to the personal representative becomes a trustee for the benefit of the estate and subject to the penalties provided for breach of trust.

6. Larceny § 4— allegation of ownership in estate — fatal defect

Indictment alleging the larceny of money "of the estate of W. M. Jessup, deceased," is fatally defective in failing to charge the owner-

ship, possession or right to possession of the money in any person, corporation, organization or agency capable of possessing or holding title to personal property.

ON *certiorari* to the North Carolina Court of Appeals to review its decision reported in 10 N.C. App. 503, finding no error in the defendant's trial before *Armstrong, J.,* at the September 28, 1970 Criminal Session, STOKES Superior Court.

This criminal prosecution was based on the following bill of indictment:

"The jurors for the State upon Their Oath present, that William S. Jessup, late of the County of Stokes, on the 13th day of October in the year of our Lord one thousand nine hundred and sixty-seven, with force and arms, at and in the County aforesaid, Twenty Thousand and One Hundred (20,100.00) Dollars in money, of the value of Twenty Thousand and One Hundred ($20,100.00) Dollars, of the goods, chattels and moneys of the estate of W. M. Jessup, deceased, then and there being found, feloniously did steal, take and carry away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

At the trial the defendant, William S. Jessup, entered a plea of not guilty. The evidence in its light most favorable to the State disclosed that W. M. Jessup was the owner and lived with his wife, Lily Jessup, on a tobacco farm in Stokes County. During the year 1964 he suffered a heart attack, spent a considerable time in the hospital and thereafter was able to do only a limited amount of farm work. He died suddenly at his home on the early morning of October 12, 1967. He was survived by his wife; a daughter, Mrs. Jamie Callum, who lived in Rockingham County; and two sons, Wilton Jessup who lived in Georgia, and the defendant, William S. Jessup. The defendant lived on a nearby farm and assisted his father in his tobacco farming, both before and after the latter's heart attack.

The deceased and Mrs. Jessup lived in a two story frame house on a country road near the Virginia line. About 100-150 yards from the house and near the highway was located a packhouse used for storing tobacco. Prior to his death Mr. Jessup kept his money (estimated to be in excess of $20,000) in a wooden box concealed in the packhouse which was kept locked.

State v. Jessup

The evidence indicated that Mrs. Lily Jessup, the widow, had approximately $3,000 in the box.

On Tuesday before Mr. Jessup died on Thursday, Mrs. Jessup had seen the box in the packhouse. She did not examine the contents. Within a few hours after the death of her husband, the box and the money were missing. At the time, the defendant had a quantity of tobacco stored in the packhouse.

The family had a disagreement about the selection of an administrator. Finally, Mr. VanNoppen, an attorney, qualified. No one made claim or complaint to the administrator that any money was missing. The defendant paid his father's burial expenses, but did not request the administrator to reimburse him.

Approximately eleven months after Mr. Jessup's death, Highway Patrolman Blalock arrested the defendant for driving drunk. At the time of the arrest the officer took the keys from the automobile. In the car were some beer cans and on the back seat was an empty cardboard pistol box. When the prosecution sought to have the officer identify the contents of the glove compartment, the court made inquiry whether the officer requested permission to make the search. The officer replied, "No, sir, he was intoxicated."

The officer unlocked the glove compartment with the keys he had taken from the defendant and found in the glove compartment 201 $100 bills, a total of $20,100. These bills were old and some were of large size. They were in packs wrapped with paper bands. On one of the bands was the name "North Wilkesboro Bank" and on another "Pilot Mountain Bank." Both bore the date 1945.

After the discovery of the money by Officer Blalock, the defendant's sister, Mrs. Callum swore out a warrant charging her brother with the theft of the exact amount of money that Officer Blalock had found. The warrant, likewise the bill of indictment, charged the theft from "the estate of W. M. Jessup, deceased."

At the preliminary hearing, according to Mrs. Lily Jessup, she asked the defendant if he got his father's money. "He said that he had it. And he got mad and said, I got it and you and Jamie and Wilton won't get a 'God damn' dollar."

At the close of the evidence the defendant made a motion to dismiss the case on account of the variance between the indictment and the proof. The court denied the motion and submitted the case to the jury which returned a verdict of guilty. From a judgment of imprisonment of not less than nine, nor more than ten years, the defendant appealed.

*Robert L. Morgan, Attorney General, by William W. Melvin, Assistant Attorney General T. Buie Costen, Assistant Attorney General, for the State.*

*Hatfield, Allman and Hall, by Roy G. Hall, Jr. James W. Armentrout for defendant appellant.*

HIGGINS, Justice.

[1] The basic question of law at issue in this case is the validity of the bill of indictment. Indictment is the foundation upon which a felony charge must rest. If it be found defective, the prosecution fails.

In this case, the defendant, a son of W. M. Jessup who died on October 12, 1967, is charged with having stolen $20,100 "of the goods, chattels and moneys of the estate of W. M. Jessup, deceased." The indictment alleges the offense occurred on October 13, 1967, the day following Mr. Jessup's death. The deceased did not leave a will. Upon his death *eo instanti*, the title to his real estate vested in his heirs. *Paschal v. Autry,* 256 N.C. 166, 123 S.E. 2d 569. The title to the personal estate vested in his personal representative. *Spivey v. Godfrey,* 258 N.C. 676, 129 S.E. 2d 253.

[2] The estate of a deceased person is not an agency for holding title to property. It is the property itself, to be administered by a personal representative commissioned by the court. "Estate" is described as "The aggregate of property . . . of all kinds that a person leaves for disposal at his death." Webster's Third New International Dictionary.

"In its broadest and most extensive sense, the term 'estate' embraces every species of property possessed by an individual and everything of which riches or fortune may consist, and includes both real and personal property, . . .

". . . . As used in a statute, it may mean property of all kinds held . . . by any legal representative appointed by the probate court . . . whose duty it is to keep such

property safely and finally to distribute it under the direction of the probate court." 28 Am. Jur. 2d Estates § 1, p. 70.

"The word 'estate' has a broader signification than the word 'property.' The former includes choses in action. The latter does not." Opinion by Pearson, J., in *Pippin v. Ellison,* 34 N.C. 61.

"A warrant (or indictment) for larceny which fails to allege the ownership of the property either in a natural person or a legal entity capable of owning (or holding) property, is fatally defective." *State v. Biller,* 252 N.C. 783, 114 S.E. 2d 659. See also *State v. Thornton,* 251 N.C. 658, 111 S.E. 2d 901.

In the case of *State v. McKoy,* 265 N.C. 380, 144 S.E. 2d 46, Justice Parker, for this Court said:

"The second (larceny) count in the bill of indictment is fatally defective. While it alleges the larceny of '$60.00 in money,' it fails to designate in any manner the owner thereof or the person in possession thereof at the time of the alleged unlawful taking. . . .

"Since the second (larceny) count is fatally defective and insufficient to confer jurisdiction, this Court *ex mero motu* arrests the judgment . . . ."

In *State v. Law,* 227 N.C. 103, 40 S.E. 2d 699, the city officers of Winston-Salem seized an automobile loaded with contraband. They parked it in the city lot. During the night the automobile was stolen. The indictment charged the defendants with larceny from the City of Winston-Salem. The Court said: "Usually a fatal variance results, in larceny cases, where title to the property is laid in one person and the proof shows it to be in another . . . . 'In all cases the charge must be proved as laid.' " The court held the larceny charge was fatally defective.

In *State v. Thornton, supra,* this Court said: "If the property alleged to have been stolen is that of an individual, the name of the individual, if known, should be stated. If it is the property of a partnership, or other *quasi* artificial person, the names . . . should be given . . . . The bill of indictment on its face is fatally defective."

[3]   After his father's death, the defendant and each heir, as a tenant in common, had a legal right to enter the packhouse. If any heir or distributee of the estate discovered money or other valuables exposed to loss, it would be proper to take possession for the purpose of preserving it for the administrator. The law recognizes the fact that a period of time must elapse between death and the qualification of the personal representative. During that interval one who takes possession of property belonging to and a part of the estate is a constructive trustee for the benefit of the administrator and must account to him. If he does not account to the administrator, he becomes executor *de son tort.* The administrator's duty is set forth in G.S. 28-4 (which comes to us from the Mother Country) :

> "§ 28-4. *Executor de son tort.*—Every person who receives goods or debts of any person dying intestate, or any release of a debt due the intestate, upon a fraudulent intent, or without such valuable consideration as amounts to the value or thereabout, is chargeable as executor of his own wrong, so far as such debts and goods, coming to his hands, or whereof he is released, will satisfy."

[4, 5]   The law (G.S. 28-69) provides a quick and immediate remedy by which a personal representative may examine any party if he has reasonable grounds to believe a person, firm or corporation has possession of any property belonging to the estate. The clerk may force delivery or attach for contempt for failure to deliver. This remedy is in addition to other remedies and is for the purpose of discovery and recovery without waiting for the slower process of a suit in the superior court. One who takes and refuses to account to the personal representative, becomes a trustee for the benefit of the estate and subject to the penalties provided for breach of trust.

In the case of *Norfleet v. Riddick,* 14 N.C. 221, Chief Justice Henderson, for the Court, said that after the death of Thomas Riddick and before Joseph Riddick qualified as executor, Joseph Riddick took possession of certain personal property (claiming it as his own). The Court in discussing his liability said that he was a "privileged intermeddler . . . liable to creditors as executor *de son tort.*" The case was cited by Ruffin, J., in *Burton v. Farinholt,* 86 N.C. 261 @ 267, and is quoted in 26 A.L.R. 1362. One who takes and holds a decedent's property is deemed an intermeddler. Such person holds as executor *de son tort. Norfleet v. Riddick, supra.*

The discussion of any question except the validity of the indictment, is by way of answer to the holding of the Court of Appeals that a *hiatus* exists between the death of the intestate and the qualification of the administrator which permitted the State to charge larceny from the estate. The Court of Appeals for its holding cites as authority the case of *Edwards v. State* (Texas), 286 S.W. 2d 157. It is true that in Edwards "The indictment alleged the ownership of the money to be in the estate of Mary E. Rose, deceased." If the indictment contained nothing more, the case would be in point. *But,* "The indictment alleged the possession to be in W. C. Shandley as one of the heirs of the estate of Mary E. Rose, deceased." The allegation of possession in Shandley would enable the defendant to establish a plea of former jeopardy if he were again charged for the same offense. Without such latter allegation a defendant could be subject to repeated charges of theft from an "estate." The allegation of theft from Shandley served to emphasize the defect in the indictment against Jessup.

For the reasons heretofore assigned, we conclude the State's argument does not satisfy the requirement of the law that the identity of the owner or the person in possession of the stolen property should be named in the indictment with certainty to the end that another prosecution cannot be maintained for the same offense.

[6]   We are forced to conclude the indictment in this case fails to charge the ownership, possession, or right to possession of the $20,100 in any person, corporation or organization or agency capable of possessing or holding the title to, or to possession of, personal property. The indictment is fatally defective.

This Court held in *State v. Law, supra:* "The question of variance may be raised by demurrer to the evidence or by motion to nonsuit. . . . 'It challenges the right of the State to a verdict upon its own showing, and asks that the court, without submitting the case to the jury, decide, as matter of law, that the State has failed in its proof.' "

The decision of the Court of Appeals, finding no error in the trial, is reversed. The Court of Appeals will remand the case to the Superior Court of Stokes County with instructions to arrest the judgment, to set the verdict aside and to quash the indictment.

Reversed.