STATE OF NORTH CAROLINA v. ARTIE GILBERT THOMPSON

No. 135

(Filed 14 January 1972)

1. Homicide § 21— felony-murder prosecution — sufficiency of evidence

The State's evidence tending to show that the defendant killed a 16-year-old boy while defendant was engaged in the perpetration of the crimes of felonious breaking and entering and felonious larceny, *held* sufficient to be submitted to the jury on the issue of defendant's guilt of first degree murder.

State v. Thompson

2. **Homicide § 4— murder committed during perpetration of felony — premeditation and malice**

   A murder committed in the perpetration or attempted perpetration of any felony within the purview of G.S. 14-17 is murder in the first degree, irrespective of premeditation or deliberation or malice aforethought.

3. **Homicide § 4— felony-murder statute — felony creating risks to human life**

   Any unspecified felony is within the purview of the felony-murder statute if the commission or attempted commission thereof creates any substantial foreseeable human risk and actually results in the loss of life; this includes, but is not limited to, felonies which are inherently dangerous to life. G.S. 14-17.

4. **Homicide § 4— prosecution under felony-murder statute — what constituted unspecified felonies — felonious breaking and entering and larceny**

   The crimes of felonious breaking and entering and felonious larceny created substantial foreseeable human risks and therefore were unspecified felonies within the purview of the felony-murder statute, G.S. 14-17, where the evidence ' tended to show that the defendant, armed with a pistol, feloniously broke into and entered an apartment, that he committed felonious larceny therein, and that while in the apartment he came upon an occupant thereof and shot and killed him.

5. **Homicide § 4— felony-murder prosecution**

   A killing is committed in the perpetration or attempted perpetration of a felony within the purview of the felony-murder statute when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous transaction.

6. **Homicide § 4— felony-murder prosecution — unintentional discharge of pistol**

   The killing of a person by one who is engaged in the perpetration or attempted perpetration of a felony which is inherently or foreseeably dangerous to human life is murder in the first degree notwithstanding the discharge of the pistol is unintentional.

7. **Burglary and Unlawful Breakings § 2— felonious breaking and entering — elements of the offense**

   A person is guilty of feloniously breaking and entering a dwelling house if he unlawfully breaks and enters such dwelling house with the intent to steal personal property located therein without reference to the ownership thereof.

8. **Criminal Law § 26; Homicide § 4— felony-murder prosecution — separate punishment for felony and murder**

   Where defendant's conviction of felony-murder was based upon a jury finding that the murder was committed in the perpetration of felonious breaking and entering, no separate punishment can be imposed for the felonious breaking and entering.

State v. Thompson

**9. Larceny § 7— larceny prosecution — variance as to owner of stolen property**

In a prosecution on indictment charging the larceny of personal property of a named person, evidence tending to show that the only property missing was that belonging to another person and his wife, *held* sufficient to warrant nonsuit on the ground of fatal variance.

Justice HIGGINS concurring.

APPEAL by defendant under G.S. 7A-27 (a) from *McLean, J.,* May 17, 1971 Schedule "A" Criminal Session of MECKLEN-BURG Superior Court.

Defendant was indicted, in the form prescribed by G.S. 15-144, for the murder of Ernest Mackey on February 9, 1971.

Defendant was indicted separately in a two-count bill which charged that on February 9, 1971, defendant committed the felonies described therein, *viz.:* The first count charged defendant with feloniously breaking and entering a certain dwelling house and building occupied by one Ernest Mackey, 3517 Burkland Drive, Apartment #3, Charlotte, N. C., with intent to steal personal property of Ernest Mackey. The second count charged that, after having feloniously broken into and entered the said dwelling house and building and apartment, defendant did steal certain goods and chattels of Ernest Mackey, to wit, "1 Zenith televison set, model K1670, assorted mens and womens clothing, 1 yellow bedspread, and 1 television antenna, of the value of $400.00 . . . . "

Upon arraignment thereon, defendant, represented by James Shannonhouse, Esq., his court-appointed counsel, pleaded not guilty to each indictment.

Uncontradicted evidence tends to show the facts narrated below.

On the morning of February 9, 1971, between 7:15 and 7:20, Cecil Mackey and his wife left their residence at 3517 Burkland Drive, Apartment #3, Charlotte, N. C., for work. The apartment consisted of a living room and kitchen downstairs and two bedrooms and a bath upstairs. There was a door at the front and one at the back. Cecil locked the front door. The door at the back "would not lock." There was no doorknob

on the back door on the outside, but there was one on the inside. One could come in the back through a window. When Cecil and his wife left for work, Ernest Mackey, age 16, was the only person in the apartment. He was in bed asleep. Ernest was Cecil's stepson, the son of Cecil's wife.

When Cecil returned to the apartment, "about 1:30 or quarter of 2:00 in the afternoon," he saw "a lot of people outside." The dead body of Ernest was being placed in an ambulance. Certain articles which had been in the apartment when Cecil left that morning were missing, namely, Cecil's "black and white Zenith television" and "bunny type antenna" and clothes of Cecil and of his wife.

Detective James L. Ruckart arrived at the Mackey apartment before Cecil's return. Ruckart observed a raised window located "approximately a foot from the back door," from which the screen had been removed. Entering the apartment, he observed a chest of drawers. Some of the drawers were standing open and part of one was on the floor in front of the dresser. Upstairs, there was a blanket on the floor of a bedroom. The blanket was smoking and burning. In the bathroom "a young Negro male [was] lying on the floor." He was lying on his face, his head resting against the base of the bathroom door, his hands "under his belly and his feet up in the bathtub." He was "fully clothed and dead." There was a wound in the back of his head, behind his right ear at the base of the skull, with "a round hole about the size of a piece of chalk." Blood from the wound was running on the shoulder of the victim and on the bathroom floor.

An autopsy was performed on the body of Ernest Mackey on February 10, 1971, by Dr. Hobart R. Wood, Medical Examiner of Mecklenburg County. Dr. Wood first saw the dead body of Ernest on February 9, 1971, at 2:05 p.m., in the bathroom on the upper floor of the Mackey apartment. From his inspection of the body at that time Dr. Wood determined Ernest "had died recently." He testified: "The body was warm, cooling, had all the aspects of fresh death." There was "no stiffness" and "no rigidity" present at that time. Dr. Wood described the bullet wound in the back of Ernest's head and testified that, in his opinion, this wound caused Ernest's death. There was no evidence of injury other than that caused by this bullet wound.

To establish that defendant committed the crimes charged, the State offered the testimony of Frances Nichols, Edward Clyburn, age 19, Larry Sings, age "about twenty," and Willie Mae Harris. Their testimony, summarized except when quoted, tends to show the facts narrated below.

On February 9, 1971, about 1:00 p.m., at the Red Shed Cafe, defendant asked Sings "if [he] could use a few dollars" and "mentioned furniture and things he could get if he had a truck or something to move it in." Sings had no conveyance but suggested that defendant talk to Clyburn. Defendant offered Clyburn $1.00 "to carry him down to his house to get a television" and "two more dollars" if he "carried him to the pawn shop." Accompanied by defendant and by Sings, and as directed by defendant, Clyburn drove his mother's 1964 blue Ford to 3517 Burkland Drive. Leaving Sings and Clyburn in the car, defendant got out and knocked on the front door of the Mackey apartment. Receiving no answer, defendant went around to the back. Obtaining entrance at the back, defendant walked through the apartment, opened the front door and called to Sings and Clyburn to "[c]ome on in." Sings entered the front door and, at the foot of the stairs, received from defendant a portable television set. Sings carried the TV set out of the back of the house and put it in Clyburn's car. The car was then located in a driveway between the apartment building in which the Mackey apartment was located and the apartment building in which the apartment of Frances Nichols was located. Frances Nichols observed the removal of the TV set from the Mackey apartment and the placement of it in the "turquoise" Ford and made haste to notify the police. Sings went back into the Mackey apartment but Clyburn drove away "real fast."

After giving Sings the TV set defendant went back upstairs. Upon Sings's return, defendant "had some clothing downstairs" and told Sings to put it in the car. Sings told him that Clyburn had already "pulled off." In response to Sings's question whether he had gotten everything he wanted, defendant replied, "Yes." When Sings said, "Let's go," defendant answered as follows: "Wait a minute. Something I have to take care of." Sings asked what it was, and defendant replied: "Somebody upstairs." When Sings asked defendant if "they" had seen him, defendant replied, "No," and added, "You go ahead and I will meet up with you later." Sings left, carrying the clothes, leaving defendant in the apartment.

A short distance from the Mackey apartment Clyburn picked up Sings and took him to the house of Willie Mae Harris at 3105 Zircon Street, "eight blocks or more" from the Mackey apartment. Over Willie Mae's protest, the television set and the clothes were taken into her house. Clyburn and Sings then left and picked up defendant. Clyburn drove back to Willie Mae's and Sings and defendant got out and went into her house. Clyburn drove away.

When Sings and defendant were alone in a bedroom in Willie Mae's house, defendant told Sings he had shot "a boy upstairs"; that he did not know whether he had killed him; that "[t]he gun just went off." He did not tell Sings "what he did with the gun" or "why he killed or shot him." After defendant told Sings "he had shot the boy upstairs," defendant left Willie Mae's house. Willie Mae demanded that the "stuff" be taken out of her house. The television set was put under a house in back of Willie Mae's house. The clothes were put in a garbage dumpster at the end of Zircon Street. Sings saw defendant again that night in Griertown. Defendant then told Sings "he didn't know why the gun went off and he had never killed nobody before." Sings told defendant to "step off" and "not to be hanging around [him]." Then Sings called the police station and about an hour later the police came to Willie Mae's house and picked up Sings. Clyburn was arrested the same night. Sings and Clyburn made statements concerning their connection with the charges set forth in the bills of indictment.

Willie Mae testified she overheard a conversation between Sings and defendant in which defendant told Sings that he had to shoot the boy because "when he was going back in the house the boy could see him and he could identify him."

Defendant was taken into custody in Philadelphia, Pennsylvania, waived extradition proceedings, and was arrested in North Carolina on February 19, 1971.

Cecil Mackey had seen defendant prior to February 9, 1971, but did not know him. Cecil *understood* that Ernest had known defendant and that defendant had previously been at the Mackey apartment.

The only evidence offered by defendant was the testimony of Dorothy Ann Burton. She testified that she saw defendant on February 9, 1971, at her house, "about 10:00 or 10:30" until

"about 2:00," and that she saw him again "about 4:00, 4:30." Upon cross-examination, she testified that she was "not sure it was the ninth," that "it could have been the 10th, it could have been the 11th," and that she just did not know "what day it was that [she] saw him at 10:00 in the morning."

In the murder case, the jury returned a verdict of guilty of murder in the first degree with recommendation that the punishment be life imprisonment.

With reference to the two-count bill of indictment charging (1) felonious breaking and entering, and (2) felonious larceny, the jury returned a verdict of guilty as charged on each count.

In the murder case, the judgment pronounced imposed a sentence of imprisonment for life. In the felonious breaking and entering case, and in the felonious larceny case, separate judgments were pronounced, each imposing a prison sentence of ten years with provision that the sentence in the felonious larceny case commence at the expiration of the sentence in the felonious breaking and entering case.

Defendant excepted to each of the three judgments and noted separate appeal entries in respect of each.

*Attorney General Morgan and Deputy Attorney General Vanore for the State.*

*James M. Shannonhouse, Jr., for defendant appellant.*

BOBBITT, Chief Justice.

[1]   Defendant assigns as error the court's denial of his motion under G.S. 15-173 for judgment as in case of nonsuit in respect of each of the three charges. The evidence, when considered in the light most favorable to the State, required submission of the murder charge. Whether the court should have submitted felonious breaking and entering and felonious larceny as separate criminal offenses will be considered below.

With reference to the murder indictment, the court instructed the jury they could return a verdict of guilty of murder in the first degree, or a verdict of guilty of murder in the first degree with a recommendation that the punishment be imprisonment for life, or a verdict of not guilty. Defendant assigns as error the court's failure to instruct the jury on the lesser in-

cluded crimes of murder in the second degree and manslaughter.

An indictment for murder in the form prescribed by G.S. 15-144 is sufficient to support a verdict of guilty of murder in the first degree if the jury finds from the evidence beyond a reasonable doubt that defendant killed the deceased with malice and after premeditation and deliberation *or* in the perpetration or attempt to perpetrate "any arson, rape, robbery, burglary or other felony." *State v. Haynes,* 276 N.C. 150, 156, 171 S.E. 2d 435, 439 (1970), and cases cited; *State v. Lee,* 277 N.C. 205, 212, 176 S.E. 2d 765, 769 (1970), and cases cited. The State contends, and offered evidence tending to show, that defendant killed Ernest Mackey while defendant was engaged in the perpetration of the crimes of felonious breaking and entering and felonious larceny. In respect of the indictment and trial for murder, variances between the allegations in the separate two-count indictment and the evidence are immaterial. These variances are considered below in determining whether defendant was properly tried, convicted and sentenced for felonious breaking and entering and for felonious larceny as separate crimes in addition to the crime of murder.

G.S. 14-17 provides in pertinent part that "[a] murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, *or* which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary *or other felony,* shall be deemed to be murder in the first degree . . . . " (Our italics.)

[2] "It is evident that under this statute [G.S. 14-17] a homicide is murder in the first degree if it results from the commission or attempted commission of one of the four specified felonies or of any other felony inherently dangerous to life, without regard to whether the death was intended or not." *State v. Streeton,* 231 N.C. 301, 305, 56 S.E. 2d 649, 652 (1949). A murder committed in the perpetration or attempt to perpetrate any felony within the purview of G.S. 14-17 is murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. *State v. Maynard,* 247 N.C. 462, 469, 101 S.E. 2d 340, 345 (1958), and cases cited.

Decisions holding that homicides committed in the perpetration or attempt to perpetrate the specified felonies of arson,

burglary, rape and robbery constitute murder in the first degree are cited in *State v. Streeton, supra* at 305-06, 56 S.E. 2d at 653. Subsequent cases to like effect include the following: Rape, *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104 (1951); *State v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387 (1954); *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365 (1960); *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232 (1963); robbery, *State v. Rogers, supra; State v. Maynard, supra; State v. Bunton,* 247 N.C. 510, 101 S.E. 2d 454 (1958); *State v. Bailey,* 254 N.C. 380, 119 S.E. 2d 165 (1961); *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969); *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970); *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970); *State v. Rich,* 277 N.C. 333, 177 S.E. 2d 422 (1970).

Decisions holding that homicides committed in the perpetration or attempt to perpetrate unspecified felonies constitute murder in the first degree include the following: Kidnapping, *State v. Streeton, supra;* felonious escape, *State v. Lee, supra;* sodomy, *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971).

In *State v. Covington,* 117 N.C. 834, 23 S.E. 337 (1895), the indictment for murder was in the form prescribed by G.S. 15-144. The felony-murder aspect of the case was submitted as murder pursuant to a felonious breaking and entering of a store with intent to commit the crime of larceny therein. In *State v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533 (1940), the indictment charged murder committed by defendant "while engaged in the perpetration of the crime of store breaking and larceny," but the felony-murder aspect of the case was submitted as murder committed by defendant while engaged in the perpetration of the crime of robbery.

The only evidence of the circumstances under which Ernest Mackey was killed was offered by the State. It tends to show that defendant feloniously broke into and entered Cecil Mackey's apartment; that he committed the crime of felonious larceny therein; and that, while upstairs in the Mackey apartment, defendant shot and killed Ernest Mackey. The fatal wound was inflicted under circumstances not disclosed by the evidence. Both Sings and Willie Mae testified that defendant stated that he had shot the boy. According to Sings, defendant told him the "gun just went off" and "he didn't know why the gun went off." According to Willie Mae, defendant told Sings he had to shoot

the boy "because when he was going back in the house the boy could see him and he could identify him."

We consider first whether the felonious breaking and entering and the felonious larceny disclosed by the evidence are felonies within the purview of G.S. 14-17. Under the evidence, defendant was guilty of felonious larceny only if the larceny was committed pursuant to a felonious breaking and entering. G.S. 14-70; G.S. 14-72(b) (2) ; G.S. 14-54(a). (There was no evidence that the property stolen had a value in excess of $200.00.) The crimes of felonious breaking and entering and of felonious larceny herein were interrelated and committed as successive events in a continuing course of conduct. The court instructed the jury that they would not consider whether defendant was guilty of felonious larceny unless they first found that he was guilty of felonious breaking and entering. The court also instructed the jury that they should return a verdict of guilty of murder in the first degree if satisfied beyond a reasonable doubt that defendant shot and fatally injured Ernest Mackey "while committing or attempting to commit the felony of breaking into or entering the apartment of Mackey . . . or during the felonious larceny"; and that if they failed so to find they would return a verdict of not guilty.

[3]  We have held that a felony which is inherently dangerous to life is within the purview of G.S. 14-17 although not specified therein. *State v. Streeton, supra; State v. Lee, supra; State v. Doss, supra.* However, as indicated in *State v. Doss, supra* at 427, 183 S.E. 2d at 679, no decision of this Court purports to hold that the only unspecified felonies within the purview of G.S. 14-17 are felonies which are inherently dangerous to life. In our view, and we so hold, any unspecified felony is within the purview of G.S. 14-17 if the commission or attempted commission thereof creates any substantial foreseeable human risk and actually results in the loss of life. This includes, but is not limited to, felonies which are inherently dangerous to life. Under this rule, any unspecified felony which is inherently dangerous to human life, or foreseeably dangerous to human life due to the circumstances of its commission, is within the purview of G.S. 14-17. In a discussion of the "Felony-Murder Rule," Professor Perkins states: "One who is perpetrating a felony which seems not of itself to involve any element of human risk, may resort to a dangerous method of committing it, or may make

use of dangerous force to deter others from interfering. If the dangerous force thus used results in death, the crime is murder just as much as if the danger was inherent in the very nature of the felony itself." R. Perkins, Criminal Law 34 (1957).

[4] In the present case, the evidence tends to show that defendant, armed with a pistol, feloniously broke into and entered the Mackey apartment; that he committed the crime of felonious larceny therein; and that while upstairs in said apartment he came upon Ernest Mackey and shot and killed him. These crimes of felonious breaking and entering, and felonious larceny, *committed under these circumstances,* created substantial foreseeable human risks and therefore were unspecified felonies within the purview of G.S. 14-17.

[5] We consider next whether the evidence shows the fatal wound was inflicted while defendant was engaged *in the perpetration of,* or attempt to perpetrate, the crimes of felonious breaking and entering and of felonious larceny. An interrelationship between the felony and the homicide is prerequisite to the application of the felony-murder doctrine. 40 C.J.S. *Homicide* § 21(b), at 870; Perkins, *op. cit.* at 35. A killing is committed in the perpetration or attempted perpetration of a felony within the purview of a felony-murder statute "when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous transaction." 40 Am. Jur. 2d *Homicide* § 73, at 367; see 51 Dickinson Law Review 12, 18-19 (1946). Robbery cases bearing on this point are *Campbell v. State,* 227 So. 2d 873, 878 (Fla. 1969); *State v. Glenn,* 429 S.W. 2d 225, 231 (Mo. 1968); *Jones v. State,* 220 Ga. 899, 142 S.E. 2d 801 (1965); *Commonwealth v. Dellelo,* 349 Mass. 525, 529-31, 209 N.E. 2d 303, 306-07 (1965); *People v. Mitchell,* 61 Cal. 2d 353, 360-62, 38 Cal. Rptr. 726, 731, 392 P. 2d 526, 531-32 (1964).

In the present case, the homicide was committed within the apartment of Cecil Mackey after defendant had feloniously broken into and entered the apartment and after the personal property of Cecil Mackey had been feloniously stolen or while it was being stolen. Ernest Mackey, the stepson of Cecil, lived in that apartment. The fact that he was fully clothed and in the bathroom when his warm body was discovered indicates plainly he was awake when shot. Whether Ernest Mackey was shot when

first approached or confronted by defendant or whether he was shot later when defendant went back "to take care of" the "somebody upstairs" is immaterial. Too, it is immaterial whether the killing was to enable defendant to consummate the crime of larceny, or to overcome resistance, or to avoid identification and arrest. In either event the killing resulted from and was the culmination of defendant's course of criminal conduct while engaged in the perpetration of felonious breaking and entering and felonious larceny.

We consider next the attenuate suggestion that the discharge of the pistol was unintentional. It is difficult to reconcile defendant's statement to Sings that "the gun just went off" and he "didn't know why" with defendant's statement to Sings that there was somebody upstairs he had "to take care of" and with the fact that Ernest Mackey's death was caused by a bullet wound in the back of his head. These evidential facts are in substantial accord with the statement attributed to defendant by Willie Mae. For present purposes we may assume that the actual discharge of the gun was unintentional. This assumed, the question presented is whether death caused by the unintentional discharge of a gun in the hands of a felon engaged in the perpetration or attempt to perpetrate a felony within the purview of G.S. 14-17 is murder in the first degree.

[6] We are in accord with Perkins's statement that "[i]t is not necessary . . . to show that the killing was intended or even that the act resulting in death was intended. It may have been quite unexpected." Perkins, *op. cit.* at 35. We hold that the killing of a person by one who is engaged in the perpetration or attempt to perpetrate a felony which is inherently or foreseeably dangerous to human life is murder in the first degree notwithstanding the discharge of the pistol is unintentional. Decisions in accord include the following: *People v. Mitchell,* 61 Cal. 2d 353, 360, 38 Cal. Rptr. 726, 730, 392 P. 2d 526, 530 (1964) ; *State v. Jensen,* 209 Ore. 239, 260, 264, 296 P. 2d 618, 626, 628 (1956) ; *Stansbury v. State,* 218 Md. 255, 260-61, 146 A. 2d 17, 20 (1958) ; *State v. Best,* 44 Wyo. 383, 389, 12 P. 2d 1110, 1111 (1932). "The turpitude of the felonious act is deemed to supply the element of deliberation or design to effect death." 40 Am. Jur. 2d *Homicide* § 46, at 336.

Although our research indicates the precise question now decided has not been presented previously to this Court, it is

noteworthy that in *State v. Phillips,* 264 N.C. 508, 512, 142 S.E. 2d 337, 339 (1965), this dictum appears: "(Of course, accident will be no defense to a homicide committed in the perpetration of or in the attempt to perpetrate a felony. G.S. 14-17.)" In *Phillips,* the question presented and decided involved the court's instructions with reference to homicide by misadventure in a second-degree-murder—manslaughter case.

G.S. 15-169, involving conviction of the lesser offense of assault in a prosecution for a greater felony, and G.S. 15-170, involving conviction for a less degree of or an attempt to commit a crime, are applicable *only when there is evidence* tending to show the defendant may be guilty of an included crime of lesser degree. *State v. Carnes,* 279 N.C. 549, 554, 184 S.E. 2d 235, 238 (1971), and cases cited. There is no evidence that Ernest Mackey was murdered by defendant otherwise than while defendant was engaged in the perpetration of the crimes of felonious breaking and entering and felonious larceny. Since there was no evidential basis therefor, defendant's contention that the court should have submitted lesser degrees of unlawful homicide is without merit.

We come now to defendant's contention that judgments as in case of nonsuit should have been entered in respect of both counts in the separate two-count bill of indictment.

[7] With reference to the felonious breaking and entering count in the separate bill of indictment, it is noted that the dwelling involved is described as "a certain dwelling house and building occupied by one Ernest Mackey, 3517 Burkland Avenue, Apartment #3, Charlotte, N. C." Although primarily the dwelling of Cecil Mackey and his wife, Ernest Mackey lived there as a member of the family. Unquestionably, the identification of the dwelling house allegedly feloniously broken into and entered by defendant was sufficient. Moreover, the breaking and entering with the felonious intent to steal was explicitly alleged. The additional allegation that the intent was to steal "the merchandise . . . and other personal property of the said Ernest Mackey," (the evidence, as discussed below, tended to show the personalty did not belong to Ernest Mackey) was unnecessary and without legal significance. If there was a breaking and entering with the felonious intent to steal, neither the identification of the owner of the personal property sought to be stolen nor the accomplishment of the felonious intent is a prerequisite

of guilt. A person is guilty of feloniously breaking and entering a dwelling house if he unlawful breaks and enters such dwelling house with the intent to steal personal property located therein without reference to the ownership thereof.

Although the evidence indicates there was a breaking, accomplished by opening a door or raising a window or both, as well as an entry into the Mackey apartment, it is noted that G.S. 14-54(a) provides: "Any person who breaks *or* enters any building with intent to commit any felony or larceny therein is guilty of a felony and is punishable under G.S. 14-2." (Our italics.) Under G.S. 14-54(c), the Mackey apartment was a "building" within the purview of G.S. 14-54(a).

The motion for judgment as in case of nonsuit with reference to the felonious breaking and entering count in the separate indictment was properly overruled. Although a remote possibility, conceivably the jury could have found beyond a reasonable doubt that defendant feloniously broke into and entered the Mackey apartment but not that defendant shot and killed Ernest Mackey. Under appropriate instructions as to this contingency, it was proper to submit the felonious breaking and entering count in the separate indictment. (Of course there would have been no basis for submitting the felonious breaking and entering if defendant had been tried solely on the murder indictment.)

[8] However, the separate judgment imposing punishment for felonious breaking and entering in addition to that imposed for the murder conviction cannot stand. When a person is convicted of murder in the first degree no separate punishment may be imposed for any lesser included offense. Technically, feloniously breaking and entering a dwelling is never a lesser included offense of the crime of murder. However, in the present and similar factual situations, a cognate principle applies. Here, proof that defendant feloniously broke into and entered the dwelling of Cecil Mackey, to wit, Apartment #3, 3517 Burkland Drive, was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of feloniously breaking into and entering that particular dwelling. The conviction of defendant for felony-murder, that is, murder in the first degree without proof of malice, premeditation or deliberation, was based on a finding by the jury that the murder was committed in the perpetration of the felonious breaking and

entering. In this sense, the felonious breaking and entering was a lesser included offense of the felony-murder. Hence, the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of felonious breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution on the theory of felony-murder. *State v. Bell,* 205 N.C. 225, 171 S.E. 50 (1933).

[9] The second count in the separate bill of indictment charges the larceny of personal property of Ernest Mackey. The evidence tends to show that the only personal property missing from the Mackey apartment was the TV set of Cecil Mackey and clothes of Cecil Mackey and his wife. There is no evidence that Ernest Mackey had any general or special property interest in any of the stolen articles. The motion for judgment as in case of nonsuit, which properly presented the question of fatal variance, should have been granted. *State v. Law,* 227 N.C. 103, 40 S.E. 2d 699 (1946), and cases cited. See also *State v. Jessup,* 279 N.C. 108, 181 S.E. 2d 594 (1971), and cases cited therein. This fatal variance alone is sufficient ground for arresting the judgment based on the verdict of guilty as charged in the larceny count of the separate bill of indictment. However, if the larceny count had properly charged the larceny of personal property of Cecil Mackey, the separate verdict of guilty of felonious larceny would have afforded no basis for additional punishment. For the reasons stated above with reference to the felonious breaking and entering count in the separate bill of indictment, the felonious larceny was, under the circumstances of this case, a lesser included offense of the felony-murder, in the special sense above mentioned. The jury's verdict in the murder case established that defendant killed Ernest Mackey while engaged in the perpetration of the interrelated crimes of felonious breaking and entering and of felonious larceny.

Defendant assigns as error portions of the court's instructions relating to the larceny count in the separate indictment. He contends the court erred by referring to the Mackey property without being specific whether the larceny involved personal property of Ernest Mackey as charged or of Cecil Mackey as shown by the evidence. Further, he contends the court erred by refusing to submit the lesser included offense of nonfelonious larceny. In view of our holding that judgment as in case of nonsuit should have been granted as to the larceny count in the sep-

arate indictment, and our arrest of the judgment based on the verdict of guilty of larceny as an independent criminal offense, these assignments of error have no present legal significance.

Each of defendant's remaining assignments of error has been considered. Suffice to say, none discloses prejudicial error or merits discussion.

The foregoing leads to this conclusion: In respect of the murder indictment, the verdict and judgment will not be disturbed. However, the separate judgments based on the verdicts of guilty of feloniously breaking and entering and felonious larceny are arrested on the ground that the commission of these crimes was an essential of and the basis for the conviction of defendant for felony-murder and therefore no additional punishment may be imposed for them as independent criminal offenses.

In the murder case: No error.

In the breaking and entering and larceny cases: Judgments arrested.

Justice HIGGINS concurring.

The defendant was tried on two bills of indictment consolidated for the purpose of trial. The bill in No. 71-CR-9360 charged that on February 9, 1971, the defendant feloniously, wilfully and of his malice aforethought did kill and murder Ernest Mackey. The bill in No. 71-CR-18932 contained two counts. The first count charged that on February 9, 1971, the defendant did feloniously break and enter a specifically described dwellinghouse occupied by Ernest Mackey for the purpose of stealing personal property therein contained. The second count charged larceny of certain specifically described articles of the personal property of Ernest Mackey.

Indictment in the murder case was drawn according to the provisions of G.S. 15-144 which permitted the State to make out a case of murder in the first degree by showing either, (1) that the killing was done with malice and after premeditation and deliberation; or (2) in the perpetration or attempt to perpetrate a robbery or other felony. *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435; *State v. Maynard,* 247 N.C. 262, 101 S.E. 2d 340; *State v. Fogleman,* 204 N.C. 401, 168 S.E. 536; *State v.*

*Arnold,* 107 N.C. 861, 11 S.E. 990. (The latter case was decided before murder was divided into two degrees.)

In this case the State proceeded under (2) and offered evidence the killing was done in the perpetration of a felonious breaking and entering and in an attempt to commit larceny (crimes of violence). The court in short summary charged the jury: "Now in Case No. 71-CR-9360 as the court has heretofore explained to you, the defendant has been accused of first degree murder. By law, any killing of a human being by a person committing or attempting to commit . . . felonious breaking . . . or . . . felonious larceny, is first degree murder without anything further being shown."

From the indictment, the evidence, and the court's charge, it is obvious the State offered evidence of felonious housebreaking and felonious larceny as material elements of murder in the first degree. The defendant argues the housebreaking and the larceny acts having been used against him as a substitute for premeditation and deliberation raising the homicide to guilty in the first degree, these same acts may not be used as an independent crime. To do so would violate his rights under Article I, Section 19, North Carolina Constitution, and Articles V and XIV of the United States Constitution which give protection against double jeopardy, or two punishments for one offense.

The rule against double jeopardy, or two punishments for one offense, is succinctly stated in Wharton's Criminal Law and Procedure, Volume 1, Section 148: "It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater . . . ."

Justice Clifton Moore, for this Court, in *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838, stated the rule.

". . . (W)hen an offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution to the other.

The only exception to this well established rule is the holding in some cases that conviction of a minor offense in an inferior court does not bar a prosecution for a higher crime, embracing the former, where the inferior court did not have jurisdiction of the higher crime."

Chief Justice Stacy thus stated the rule in *State v. Bell,* 205 N.C. 225, 171 S.E. 50.

"The principle to be extracted from well-considered cases is that by the term, 'same offense,' is not only meant the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment.

When such integral part of the principal offense is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offense will bar a prosecution for the greater.

To adopt any other view would tend to destroy the efficacy of the doctrine governing second jeopardy which is embedded in our organic law as a safeguard to the liberties of the citizens."

Additional authorities on the question of double jeopardy, or two punishments for one offense, are cited and discussed in the dissenting opinion in *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102. The jury returned a verdict of guilty of murder in the first degree with a recommendation the punishment be life imprisonment. "The jury also returned a general verdict of guilty of the housebreaking and larceny charge." The court imposed the mandatory sentence of life imprisonment in the murder case and a sentence of ten years in the housebreaking and larceny case.

I agree the record does not disclose reversible error in Case No. 71-CR-9360 and likewise I agree the judgment must be arrested in Case No. 71-CR-18932. The Court now arrests the judgment in the included offense. This the Court should have done but failed to do in Richardson.