**ADA B. JAMES as ATTORNEY IN FACT for THELMA PRINCE & OLIVE PRINCE, Plaintiffs**

**v.**

**G. LUZ A. JAMES & ASTA JAMES, Defendants**

Civil No. 59/1979

Territorial Court of the Virgin Islands
Div. of St. Croix at Christiansted

April 18, 1980

JEAN-ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

G. LUZ A. JAMES, ESQ., Christiansted, St. Croix, V.I., *for defendants*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

Acting as attorney in fact for Thelma and Olive Prince, Ada B. James brings this action to have the April 9, 1979, tax sale of Parcel No. 7 Estate Western Suburb (hereafter "Parcel No. 7"), St. Croix, U.S. Virgin Islands declared null and void or, alternatively, to have defendants declared trustees for the benefit of plaintiff, of said parcel.

## FACTUAL BACKGROUND

Axelina Prince died intestate in 1929 seized of parcel No. 7 in fee simple. In accord with the laws of Descent and Distribution (Chapter 3, Title 15, V.I.C.), the title descended to her seven surviving children each of whom took an undivided 1/7th interest in the whole.[1] One of Axelina's daughters, May Prince James, resided on the land and paid the taxes therefor from Axelina's death in 1929 until her own death in 1951. Upon her death, May's 1/7th interest passed by intestacy, in proportions not established at trial, to Wilfred James, Wilmot James, Randall James, and the principal defendant herein, G. Luz A. James (hereafter "James").

---

[1] Upon the death of an intestate, title to his or her realty vests immediately in the heirs irrespective of whether there has been an adjudication and distribution. Russo v. Inzirillo, 277 N.E.2d 302 (Mass. 1979); State v. Jessup, 181 S.E.2d 594 (N.C. 1971).

From 1951 until his death in 1964, another of Axelina's children, Jerome Prince, paid the taxes on Parcel No. 7. Upon his death, his 1/7th interest in the property passed by intestacy, in proportions also not established, to his children, Thelma, Olive and Charles Prince. In 1964, Thelma and Olive assumed the payment of taxes through plaintiff, their attorney in fact. Through mistake or inadvertence, taxes for the years 1973 and 1974 were not paid and at a tax sale held on April 9, 1976, James and his wife, Asta, purchased Parcel No. 7 for the sum of $116.48. A tax sale certificate of purchase was executed and delivered to them pursuant to 33 V.I.C. § 2251.

On April 5, 1977, and before the expiration of the one year statutory redemption period, plaintiff, through her authorized agent, Lucille Christian, tendered the tax sale purchase price of $116.48 directly to James. This offer of redemption was rejected. The following day, by letter dated April 6, 1977, and still within the redemption period, Christian submitted a postal money order in the amount of $116.48 to James and Asta. The second offer of redemption was also rejected by James who returned the money order to Christian along with a letter dated April 7, 1977, in which he acknowledged the redemption attempts of April 5th and April 7th but expressed his intention not to relinquish the interest in Parcel No. 7 purportedly acquired at the tax sale.

## I. REDEMPTION

██ The first issue to be addressed is whether plaintiff, through Christian, complied with the statutory procedures for redemption of real property subject to conditional sale for tax arrearage.

The procedure for plaintiff's first redemption attempt is set forth in 33 V.I.C. § 2581, entitled "Redemption upon payment to the purchaser", which provides in pertinent part:

> The owner of any real property sold for taxes, his heirs or assigns, or any person having a right or interest therein, may redeem the same within one year from date of the certificate of purchase by paying to the purchaser, his heirs or assigns, the full amount of the purchase money, with annual interest at the rate of six percent, together with all costs incurred and taxes due. Upon payment of said amounts, the redemptioner shall be entitled to receive from the purchaser, his heirs or assigns, the said certificate of purchase upon which shall be duly indorsed before a notary public the receipt of the redemption money, and

43

a fee of fifty cents shall be paid by the redemptioner to the notary public. The receipt duly indorsed upon the certificate of purchase shall operate as a release of all claim to title to the real property sold under or by virtue of any such sale for non-payment of taxes. And the redemptioner may have such release duly entered in the real property register against the certificate of purchase upon payment to the recorder of deeds the fee of $1.00 . . .

It is clear that the sum of $116.48 tendered by plaintiff represented the amount of the purchase money only. It did not include interest on the purchase price. Nor did it include "costs incurred or taxes due", if any. Thus, the first redemption attempt was invalid since plaintiff failed to tender the "full amount" contemplated by the statute.

The validity of the second redemption attempt is to be determined by 33 V.I.C. § 2582, entitled "Redemption by payment to the recorder of deeds", which prescribes the procedure to be used where tender has once been rejected;

If the purchaser, his heirs or assigns refuses to accept the tender of redemption money, the person making the tender shall repeat it in the presence of at least two witnesses. If the tender is again refused, the said person and witnesses shall make oath before the recorder of deeds who recorded the certificate of attachment, that due tender of the lawful amount of redemption money has been made and refused, whereupon the recorder shall compute from the proper records the lawful amount of redemption money due, in accordance with the provisions of this subchapter and upon receipt of the same shall issue to the redemptioner a certificate of redemption. The payment of such redemption money to the recorder shall restore to said former owner, his heirs, or assigns, all the right, title, interest and estate in and to said property, held by said former owner before the sale for nonpayment of taxes.

Although plaintiff's second redemption attempt was not made in the presence of two witnesses, this alone would not render it ineffectual. Requiring the presence of two witnesses at a tender where an initial tender has been rejected can only be for the purpose of verifying that a valid tender has in fact been made. Where, as here, the purchaser acknowledged the second tender in writing, verification by witnesses would serve no purpose and is therefore

44

unnecessary. The Courts have repeatedly held that tax redemption statutes are to be construed liberally in favor of the redemptioner and exercise of the right of redemption. Barrett v. Holmes, 102 U.S. 657; 54 A.L.R.2d 165; 72 Am.Jur.2d State and Local taxation, § 988.

Plaintiff's failure to pay the lawful amount of redemption money to the recorder of deeds pursuant to § 2582, and thereby secure a certificate of purchase, however, stands on different ground. The right of redemption depends solely upon the statutory grant and exists only to the extent so provided. 72 Am.Jur.2d, State and Local Taxation, § 988. Redemption, by definition, is the buying back or repurchase of property. Black's Law Dictionary 1443 (4th ed. 1968). Payment of redemption money in the proper amount or valid tender thereof is an essential step for affecting a redemption, which was not taken by plaintiff. Cf. Federal Land Bank of St. Louis v. Droste, 325 N.E.2d 37 (Ill. App. 1975).

Having found that plaintiff failed to properly exercise her statutory right of redemption, I conclude that her conditional right to redeem the property was lost.

## II. IMPOSITION OF TRUST

Plaintiff next urges that under the existing facts the law will imply a trust, independent of the intention of the purchasers, in favor of the cotenants Thelma and Olive. It is clear that James, Thelma, and Olive derived their title to Parcel No. 7 through their common ancestor, Axelina. Although the evidence does not reveal the precise share of each, they, and other of Axelina's heirs at law, are tenants in common.

The general rule is that property sold for taxes and purchased by one cotenant inures to the benefit of all cotenants and any cotenant may be reinvested with his proportion by seasonally paying the purchasing co-owner his proportionate share of purchase money, costs and subsequent taxes. Annot., "Right of cotenant to acquire and assert adverse title or interest as again other cotenants," 54 A.L.R. 874; 20 Am.Jur.2d, Cotenancy and Joint Ownership 72. The rule is founded upon a community of interest in a common title which creates such a relation of confidence and trust between the parties that it would be inequitable to allow one of them to buy an outstanding adversary claim to the common estate and assert it for his exclusive benefit to the prejudice of his co-owners.

45

There are, of course, exceptions to the general rule. See generally Annot., supra and cases cited therein; Ford v. Jellico Grocery Co., 240 S.W. 65 (Ky. 1922) (rule of inurement inapplicable after the severance of the relation of cotenancy); Watkins v. Green, 60 N.W. 44 (Mich. 1894) (general rule is not applicable to tenants in common whose interests accrue at different times, by different means, and from different persons). I found none, however, which are applicable to the facts herein.

In short, I hold that defendants' purchase of Parcel No. 7 inured to the benefit of their co-owners, Thelma and Olive, at their option. This option they may or may not exercise at their discretion. If an election is made to exercise the option, payment of the proportionate share of the purchase money, costs incurred and subsequent taxes paid, with annual interest at the rate of nine percent may be made and a reconveyance obtained. However, if Thelma and Olive fail to exercise the option within a reasonable time, defendants may rely on their acquiescence and hold their shares as their individual property.[2]

I deem sixty (60) days from the date of this memorandum decision as a reasonable time within which to exercise, or forever lose, this option.

---

[2] I need not and do not decide the rights of any of the Cotenants who are not named parties in this action since this Court can exercise no jurisdiction over them.